[Crim. No. 13029. Fourth Dist., Div. One. Jan. 7, 1982.]

THE PEOPLE, Plaintiff and Respondent, v.
WILLIAM CHARLES OTTOMBRINO, Defendant and Appellant.

COUNSEL

Joel M. Kriger and Bradley Unkeless for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Daniel J. Kremer, Assistant Attorney General, Harley D. Mayfield and John W. Carney, Deputy Attorneys General, for Plaintiff and Respondent.

Edwin L. Miller, Jr., District Attorney, and Charles E. Nickel, Deputy District Attorney, as Amicus Curiae on behalf of Plaintiff and Respondent.

OPINION

LEVITT, J.[*]—William Charles Ottombrino was charged with rape, robbery, attempted murder and other offenses involving victim Caridad Woolsey, together with kidnaping, rape and oral copulation involving victim Teresa Marshall.

A videotape was made at Ottombrino's arraignment, he was photographed by the police, and his picture was shown to the victims at a photo lineup. Both victims selected Ottombrino's picture, but said they would like to see him in person. Both victims then observed a television broadcast of the videotape at the suggestion of the police and identified Ottombrino. Later at a live lineup, both victims positively identified Ottombrino as their attacker, as they did also at the preliminary hearing and the trial. Ottombrino moved to suppress the results of the videotape television broadcast and subsequent identifications. The trial court ruled the videotape television broadcast viewing was highly suggestive and inadmissible but the live lineup and in-court identifications were not the product of it and hence the court admitted them into evidence.

---

[*]Assigned by the Chairperson of the Judicial Council.

After a jury trial, Ottombrino was convicted of attempted murder, assault with intent to commit murder, rape, kidnaping with infliction of great bodily injury, kidnaping, kidnaping with intent to commit robbery, assault with a deadly weapon, battery, oral copulation and a second count of rape. He was sentenced to state prison with rape as the principal term. The court set the upper base term of eight years and added five years for enhancement, but stayed three additional years of enhancement for violation of Penal Code[1] section 12022.3 pursuant to section 654. Consecutive terms were given for two counts for a total of an additional eighteen years. All other counts were stayed pursuant to section 654.

Ottombrino did not dispute the crimes had occurred nor that he had access to the vehicle used in the crimes against Woolsey. (His fingerprints were discovered on a bottle in the vehicle identical to bottles purchased by the assailant, and his palm print was found on the inside driver's window.) His point of defense was misidentification of him by both victims.

On appeal, Ottombrino contends:

(1) The trial court erred in denying his motion to suppress the live lineup and in-court identifications because (a) they were impermissibly tainted by the videotape viewing, i.e., the television broadcast which was viewed by the victims at the request of the police was so suggestive both the in-court identifications and the live lineup identification were tainted by it, thus admitting evidence of any was prejudicial, and (b) he was denied right to presence of counsel at the videotape viewing, i.e., viewing of the television broadcast without notifying his counsel was a denial of his Sixth Amendment right.

(2) Incompetency of his trial counsel by failing (a) to move to suppress and retest a semen sample the prosecution failed to preserve, (b) to raise a motion to sever charges arising from separate incidents, and (c) to carefully investigate potential witnesses.

(3) The trial court erred in denying a new trial on the grounds of inadequacy of counsel and prosecutorial misconduct.

---

[1] All references are to the Penal Code unless otherwise indicated.

(4) The trial court erred in sentencing him since Penal Code section 667.6, subdivision (c) does not allow a fully consecutive sentence for attempted murder.

*The In-court Identifications Were Properly Admitted at Trial*

■ We hold the trial court did not err in denying Ottombrino's motion to suppress the in-court identifications. The video taping of Ottombrino also included his attorney while the two were sitting in the front row of the courtroom waiting for court session to commence. It was made by television channel 10 before the commencement of proceedings. The police had not called the television station and did not arrange for the camera crew to be present in the courtroom. Ottombrino's attorney participated by making an exculpatory statement.[2] The videotape was shown on the channel 10 evening news. Neither victim remembered hearing any words from the television before recognizing Ottombrino. Victim Marshall did not hear the reason why he was in the courtroom.

■ A conviction based on eyewitness identification will be set aside only if the pretrial identification procedure was so impermissibly suggestive as to give rise to the very substantial likelihood of irreparable misidentification. (*Simmons* v. *United States* (1968) 390 U.S. 377, 384 [19 L.Ed.2d 1247, 1253, 88 S.Ct. 967]; *People* v. *Hunt* (1977) 19 Cal.3d 888, 894 [140 Cal.Rptr. 651, 568 P.2d 376].) Even if impermissibly suggestive, identification is not excluded if the People can demonstrate the identification had a basis independent of the suggestive procedure. (*Neil* v. *Biggers* (1972) 409 U.S. 188, 199 [34 L.Ed.2d 401, 411, 93 S.Ct. 375]; *People* v. *Martin* (1970) 2 Cal.3d 822, 831 [87 Cal.Rptr. 709, 471 P.2d 29].) ■ The evidence bearing on the independence of the admitted identifications was considerable.

Victim Woolsey was with Ottombrino for approximately two hours on the night she was assaulted, much of the time in well-lighted areas. She had a good look at his face. Victim Marshall was with him for ap-

---

[2]Ottombrino's attorney stated on the videotape: "They have already arrested a number of people in this particular case and a number of people that have—that look very similar to my client, and so we feel that there is an identification situation here that we don't want to jeopardize by having the thing publicized too much as far as the television cameras are concerned because it—if it is played over the air, why, then, it gives the victim the opportunity to see the latest one that they have arrested on the same offense."

proximately one-half hour, also in good light, and she was able to see his face. Both victims helped the police prepare composite drawings of their assailant. Both victims selected Ottombrino's photograph before seeing the videotape. Both indicated their identifications at the live lineup were based on their memories of the incidents.

### The Live Lineup Identification Should Not Have Been Admitted Into Evidence

■ The trial court admitted the live lineup identification on the ground it was held at the behest of Ottombrino after the television viewing and after Ottombrino knew or had every opportunity to know that the victims had seen the screening. The trial court stated: "Well, you can't have it both ways. You can't ask for the lineup, speculating that if it is favorable you will take advantage of it, but if it is unfavorable it will be excluded because of the screening. So, therefore, I am not going to suppress the live lineup." We disagree. The fact defense counsel may have asked for the live lineup does not permit judicial use of tainted evidence. However, in view of the nature of the additional evidence of guilt, and particularly in light of the court's finding the in-court identifications were proper, we determine that admission of the live lineup identification was not prejudicial in the sense it brought about a miscarriage of justice under article VI, section 13 of the California Constitution or that the conviction must be reversed, since the error, if any, was harmless beyond a reasonable doubt. (*Chapman* v. *California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 710, 87 S.Ct. 824, 828, 24 A.L.R.3d 1065].)

We make the same determination relative to the claim of denial of presence of counsel at the videotape television broadcast, noting the contention of the Attorney General that this issue is moot since the video tape was not admitted into evidence.

### Trial Counsel Was Not Incompetent

■ A defendant has the burden of proving a claim of inadequate trial assistance and must show counsel failed to act in a manner to be expected of a reasonably competent attorney acting as a diligent advocate, which inadequacy results in the withdrawal of a potentially meritorious defense. (*People* v. *Pope* (1979) 23 Cal.3d 412, 425 [152 Cal.Rptr. 732, 590 P.2d 859, 2 A.L.R.4th 1].) This must be factually

demonstrated and not based on mere speculation. (*People* v. *Stephenson* (1974) 10 Cal.3d 652, 661 [111 Cal.Rptr. 556, 517 P.2d 820].)

1. ■ Failure to seek to suppress and retest semen sample:

The semen sample was tested by an independent expert and Ottombrino, by conduct and statements, indicated a belief it was a fair test. Here, the evidence was sufficiently preserved by having the samples tested by a highly qualified and independent laboratory; moreover, the independent expert indicated that even though the material had not been refrigerated, it would be possible to redo the tests. Indeed, Ottombrino noted if the tests were to be performed again, the same expert would perform them. Therefore, it is mere speculation that Ottombrino's attorney was incompetent by withdrawing the motion to have the semen retested.

2. ■ Failure to seek a severance of charges arising from separate incidents:

Offenses are of the same class, for purposes of section 954 allowing an accusatory pleading to charge two or more different offenses of the same class of crimes or offenses, if they possess common characteristics or attributes. (*People* v. *Meneley* (1972) 29 Cal.App.3d 41, 51 [105 Cal.Rptr. 432].) Here, the assaults were based on the perpetrator's desire for sexual gratification, and both involved a rape and considerable movement of the victim. A defendant bears the burden of affirmatively showing substantial prejudice will result from joinder. (*People* v. *Kemp* (1961) 55 Cal.2d 458, 477 [11 Cal.Rptr. 361, 359 P.2d 913].) Ottombrino's claim of a quandary in wishing to testify as to charges involving one victim and not to those of the other victim was not apparent before the trial as it did not develop until after trial that certain alibi witnesses would not be available.

3. Failure to investigate potential witnesses:

■ Inadequate assistance of counsel is not established merely by a showing defense counsel has failed to interview and call all prospective witnesses. (*People* v. *Floyd* (1970) 1 Cal.3d 694, 710 [83 Cal.Rptr. 608, 464 P.2d 64].) The failures claimed by Ottombrino were all properly disposed of by the trial court as appropriate trial tactics based on complex factual considerations. Without a declaration from trial coun-

sel explaining his conduct, it would be sheer speculation counsel failed to properly investigate the case.

■ *The Trial Court did not Commit Error in Denying a New Trial on the Grounds of Inadequacy of Counsel and Prosecutorial Misconduct.*

Ottombrino, admitting a trial judge is accorded great discretion in ruling upon a motion for a new trial and a Court of Appeal should give great deference to such discretion on appeal, asks us to review the entire record to determine whether there has been prejudicial error (see *City of Los Angeles* v. *Decker* (1977) 18 Cal.3d 860, 871-872 [135 Cal.Rptr. 647, 558 P.2d 545]). Ottombrino cites no specifics and makes no reference to the record.

We have already addressed inadequacy of counsel, and find nothing else in the record to consider.

In his motion for new trial, Ottombrino charged prosecutorial misconduct based on what was clearly a misunderstanding of the evidence. He claimed, although police reports indicate a Winston cigarette package was discovered at the scene of one rape and this was testified to, evidence not introduced showed a Marlboro package was found at the scene of the rape. However, one investigating officer had testified to seeing a Marlboro package at the crime scene and one was found in the vehicle used in the rape rather than at the scene.

Ottombrino also claimed prosecutorial misconduct regarding statements not found in the record. Our review of the entire record, including the evidence, disclosed no error in the denial of Ottombrino's motion for new trial.

■ *The Trial Court Sentenced Properly Except for Staying One Enhancement to Count Three*

We decline to accept Ottombrino's interpretation of section 667.6, subdivision (c).[3]

---

[3]Section 667.6, subdivision (c), provides: "In lieu of the term provided in Section 1170.1, a full, separate, and consecutive term may be imposed for each violation of subdivision (2) or (3) of Section 261, Section 264.1, subdivision (b) of Section 288, Section 289, or of committing sodomy or oral copulation in violation of Section 286 or 288a by force, violence, duress, menace or threat of great bodily harm whether or not

Ottombrino attacks the propriety of the imposition of a full-force term for attempted murder and for the infliction of great bodily injury, after the imposition of two full-force terms for two separate and unrelated rapes, one with an enhancement of great bodily injury. The trial court's sentence imposed a term of 31 years. Ottombrino's claim there should be only one-third of the middle base term of seven years for attempted murder and one-third of the infliction of great bodily injury enhancement would result in a term of only 23 years.

This case presents a typical fact pattern wherein a trial court must utilize multiple sections of the Penal Code in arriving at a complete and just term of incarceration. We address the apparent conflict between sections 667.6 and 1170.1 raised herein.

■ The fundamental determination is whether forcible sex crimes serve as principal terms with nonsex crimes being set as subordinate terms, or whether forcible sex crimes are a separate category for purposes of sentencing and are not to be considered as principal terms. We hold sentences for nonsex crimes are determined under the theory of principal and subordinate terms, while forcible sex crimes are set independently and, after the two separate calculations are made, the sum of the two categories is the resulting total term.

After July 1, 1977 (the date of the Uniform Determinate Sentencing Act) and before January 1, 1980 (when certain amendments discussed *infra* were made), the Penal Code provided two separate sentencing procedures.

The first procedure reflected generally in the provisions of section 1170 and 1170.1, established for most felony criminal offenses a specific term of incarceration punishable by one of three terms. It further provided specific terms for enhancements. It also provided various factors that would affect a grant of probation. Section 1170.1 also established the procedure for the calculation and imposition of consecutive terms and enhancements, creating "principal" and "subordinate"

---

the crimes were committed during a single transaction. If such term is imposed consecutively pursuant to this subdivision, it shall be served consecutively to any other term of imprisonment, and shall commence from the time such person would otherwise have been released from imprisonment. Such term shall not be included in any determination pursuant to Section 1170.1. Any other term imposed subsequent to such term shall not be merged therein but shall commence at the time such person would otherwise have been released from prison."

terms. Maximum aggregate terms were established and limitations were provided for. Included within this general sentencing scheme were the offenses which are currently defined as forcible sex crimes, including sections 261, 286, 288, 288a and 289. One exception to the principal and subordinate scheme involved the commission of a felony while serving a prison sentence. In that situation, the new offense was to be designated as a principal term and to be served as a full strength consecutive to the aggregate term for which the defendant was already incarcerated. (See, e.g., *People v. Galliher* (1981) 120 Cal.App.3d 149, 153-155 [174 Cal.Rptr. 467], hg. den. Oct. 2, 1981.)

The second sentencing procedure involved certain felony offenses not framed within the three-term sentencing format. Offenses for which death or life imprisonment could be imposed, offenses for which the penalty was limited to not exceed one year and one day in state prison, offenses which were committed before the enactment of the Determinate Sentencing Act which were sentenced to an indeterminate term, and offenses which were committed and sentenced in foreign jurisdictions were all exempted, by section 1168, subdivision (b), from the principal and subordinate computation scheme.

This distinction in procedure is clearly understood upon an evaluation of a defendant convicted of offenses subject to the provisions of both sections 1170.1 and 1168, subdivision (b). California Rules of Court, rule 451, as amended effective January 1, 1979, reflects a term calculated under section 1170 is to be computed without reference to the indeterminate term calculated pursuant to section 1168 and that the terms shall be served independently. (See also *People v. Grimble* (1981) 116 Cal.App.3d 678 [172 Cal.Rptr. 362]; *People v. Day* (1981) 117 Cal.App.3d 932 [173 Cal.Rptr. 9]; *People v. McGahuey* (1981) 121 Cal.App.3d 524 [175 Cal.Rptr. 479].)

Effective January 1, 1980, a third category of criminal offenses, i.e., forcible sex crimes as defined by section 667.6, were removed from the first procedure. Definitions of some offenses were changed, some punishments and consequences for convictions were modified, and new procedures for adjudication and term computation were created.

Essential to the creation of this new sentencing category are the provisions of section 667.6. Section 667.6, subdivision (a), provides that any person convicted of a forcible sex offense with a prior conviction of a forcible sex offense shall serve a term of five years for the prior con-

viction. Section 667.6, subdivision (b), provides any person convicted of a forcible sex offense with two or more prior prison terms for forcible sex offenses shall serve a term of ten years for each such prison prior. Section 667.6, subdivision (c), provides that the court may impose full-strength consecutive sentences for multiple forcible sex crimes arising out of a single transaction with a single victim. Section 667.6, subdivision (d), mandates full-strength consecutive sentences for forcible sex crimes against separate victims, or the same victim on separate occasions. In addition, section 1170.1, subdivision (h), states enhancements to the forcible sex offenses shall not be limited in number and shall be full and separately served and shall not be merged with any other term of enhancement.

This new and different sentencing scheme thus does not deal within the principal and subordinate format, nor is there any limitation to the ultimate total term for multiple forcible sex convictions.

We are convinced the terms computed pursuant to section 667.6 are independent and separate to terms computed pursuant to sections 1170 and 1170.1.

The language of subdivisions (c) and (d) of section 667.6 clearly directs the court to calculate consecutive terms for forcible sex offenses independently and separately from the general principal and subordinate scheme of section 1170.1, subdivision (a). Subdivision (c) begins with the language: "In lieu of the term provided in 1170.1, a full, separate, and consecutive term may be imposed." It also states: "If *such term* is imposed consecutively pursuant to this subdivision, it shall be served consecutively to any other term of imprisonment, and shall commence from the time such person would otherwise have been released from imprisonment." (Italics added.) The phrase "such term" means for the violent sex offense which the statute excludes from consideration under section 1170.1. Once having excluded it, it cannot be used for principal and subordinate term determination. The language of subdivision (d) is similar in reference to other terms. The term for the forcible sex offenses shall not be included in any determination pursuant to section 1170.1 and any term imposed subsequent to the term for the forcible sex offenses shall not merge, but shall commence at such time as the person would have been released from prison for the prior term. Hence, consecutive terms for forcible sex offenses are to be computed as full force and separate from other terms and not by means of the principal and subordinate scheme provided in section 1170.1. Also, if

there are any other terms of imprisonment, they shall be served separately from the term computed under these subdivisions of section 667.6.

Section 1170.1, subdivision (a), supports this statutory construction. It provides: "Except as provided in subdivision (b) and subject to section 654 ... the aggregate term of imprisonment for all such convictions shall be the sum of the principal term, the subordinate term and any additional term imposed pursuant to section 667.5 or 667.6...."

In *People* v. *Carter* (1980) 104 Cal.App.3d 370 [163 Cal.Rptr. 475], the court held a prior prison term imposed pursuant to section 667.5, subdivision (b), was not an enhancement to a particular crime, but was a separate term which was added to the other terms to arrive at the aggregate term as specified in section 1170.1, subdivision (a). Thus, a term set pursuant to section 667.6, whether a prison prior term or a term for a criminal offense, must be added to the other terms set to ultimately compute the final aggregate term.

One provision presenting apparent confusion deserves analysis. The second sentence of section 1170.1, subdivision (a), states: "The principal term shall consist of the greatest term of imprisonment imposed by the court for any of the crimes, including any enhancements imposed pursuant to section 12022, 12022.3, 12022.5, 12022.6, 12022.7 or 12022.8." Inferentially, this suggests that a forcible sex crime could serve as a principal term, because the enhancement listed as 12022.8 can be imposed only upon a conviction of a substantive offense within the meaning of 667.6. Inclusion of section 12022.3 provides a similar inference, although it is not limited strictly to the crimes defined in 667.6. We reject these inferences for several reasons.

First, under the provisions of section 667.6, subdivision (c), are all other crimes deemed subordinate, or are only the other forcible sex crimes subordinate terms with a separate and independent computation (principal and subordinate) for the other crimes? Second, if section 667.6, subdivision (c), provides for forcible sex crimes to be evaluated within the principal and subordinate scheme, what is to be done with the enhancements attached to the subordinate terms? There is no direction from the statute to answer these inquiries.

Second, subdivision (h) of section 1170.1, which specifies the term for any enhancements to forcible sex crimes shall not be limited in

number, and each shall be full and separately served and not be merged with any other term or with any other enhancement, is inconsistent with the general statutory scheme of subordinate terms and enhancements.

Third, we believe the proper construction is that section 1170.1, subdivision (a), lists all statutory enhancements and all of them are to be added to the base term. This way the exclusion of an appropriate enhancement when setting the term would not occur, intentionally or accidentally. Hence, the "in lieu of" language of section 667.6, subdivision (c), directs the sentencing court away from the principal and subordinate scheme with forcible sex crimes rather than presenting an alternate sentencing pattern. This construction accommodates the omission of reference to the subordinate sentencing pattern of substantive forcible sex crimes and for enhancements attached thereto, and places subdivision (h) of section 1170.1 into a logical sentencing format.

The district attorney in an amicus curiae brief suggests a "box theory" to segregate offenses based upon the manner of prescribed punishment.[4] We concur with this theory.

Pursuant to the foregoing, the principal term in Ottombrino's case was attempted murder, and rape was appropriately a special consecutive term pursuant to section 667.6, subdivision (c). Having so decided, it follows the court below improperly stayed the three-year enhancement for violation of section 12022.3 attached to count three. It

---

[4]The district attorney's amicus curiae brief describes the "box theory" in part as follows: "In this system, forcible sex crimes are calculated within the confines of one box. Within that box, calculations and computations are performed which address each forcible sex crime and attending enhancements. A choice of term is made for each offense, the enhancement terms are added on, and the determination is made as to whether the terms are to be imposed consecutively or concurrently. Each term is full strength, and there is no limitation as to the total forcible sex crime term. After that calculation is made, the forcible sex prior convictions are computed and added to the total. Within that box, the entire term for the forcible sex offenses is considered and established.

"In a second box, all other offenses, enhancements, and prior prison offenses are placed. Within that box, utilizing the provisions of section 1170.1, a principal term is set and any other consecutive terms are set as subordinate terms. Enhancements are added in accordance with the statutory procedure to both the principal and subordinate terms. Rules regarding the limitation of total terms are utilized and finally, appropriate terms for prison priors are added to the box, resulting in a total or aggregate term.

"If there are offenses for which a life term is to be imposed, a third box might be utilized to accommodate the third category of sentencing procedure.

"At the conclusion of the computations within the various sentencing boxes, the court simply adds the term of each box to the term of the other boxes to arrive at the appropriate sentence."

should have been imposed pursuant to section 1170.1, subdivision (h), which mandates the imposition of full consecutive terms for each enhancement to a conviction of forcible rape.

Judgment affirmed and remanded for sentencing in accordance with this opinion.

Wiener, Acting P. J., and Work, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied March 11, 1982. Kaus, J., Broussard, J., and Reynoso, J., were of the opinion that the petition should be granted.