[No. B204851. Second Dist., Div. Six. Aug. 13, 2009.]

THE PEOPLE, Plaintiff and Respondent, v.
JALIEL RASHAD NEELY, Defendant and Appellant.

## COUNSEL

Lynda A. Romero, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Jason Tran and Dana M. Ali, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

PERREN, J.—"Do the crime, do the time," is a bedrock principle of criminal law; straightforward, simple, and concise. A defendant should know the consequences likely to flow from committing a crime. Likewise, the prosecutor, defense counsel and sentencing judge should know the length of the sentence and the rules for its determination. But, often they do not.

For over 30 years, opinions of the California Courts of Appeal have commented on the frustrating and needless complexity of the determinate sentencing law (DSL). Reversals and remands for resentencing resulting from the misapplication of the DSL litter the pages of appellate decisions, both published and unpublished.[1] This is yet another such case to fall victim to the "labyrinthine procedures,"[2] of the "legislative monstrosity"[3] whose "mind-numbingly complicated"[4] statutes are "capable of ensnaring even its most erudite afficionados."[5] Here, the collective experience and wisdom of the trial judge, the prosecutor and defense counsel resulted in an unlawful sentence whose pronouncement violated the rules governing (1) the imposition of consecutive sentences that implicate indeterminate and determinate terms, (2) the proper selection of a base term for a given offense, and (3) the designation of appropriate principal and subordinate terms under the DSL.

Jaliel Rashad Neely appeals the judgment following his conviction for first degree murder (Pen. Code, §§ 187, 189),[6] two counts of attempted second degree robbery (§§ 664, 211), and possession of cocaine base for sale (Health & Saf. Code, § 11351.5). Neely contends there was insufficient evidence to support one of the attempted robbery convictions, and that the trial court erroneously admitted evidence that an accomplice had confessed to participation in the murder and attempted robberies. We conclude that substantial evidence supports the conviction and that there was no evidentiary error. Neely also claims the trial court erred by not staying the sentence for one of

---

[1] Justice Robert Gardner was the first to comment on the DSL in *Community Release Bd. v. Superior Court* (1979) 91 Cal.App.3d 814, 815, footnote 1 [154 Cal.Rptr. 383], and *People v. Sutton* (1980) 113 Cal.App.3d 162, 164 [169 Cal.Rptr. 656], where he referred to the law as a "legislative monstrosity . . . bewildering in its complexity." (See also *People v. Bond* (1981) 115 Cal.App.3d 918, 920 [172 Cal.Rptr. 4]; *People v. Reyes* (1989) 212 Cal.App.3d 852, 858–859 [260 Cal.Rptr. 846]; *People v. Begnaud* (1991) 235 Cal.App.3d 1548, 1552 [1 Cal.Rptr.2d 507]; *People v. Sherrick* (1993) 19 Cal.App.4th 657, 661 [24 Cal.Rptr.2d 25]; *People v. Winslow* (1995) 40 Cal.App.4th 680, 684, fn. 1 [46 Cal.Rptr.2d 901]; *People v. Velasquez* (1999) 69 Cal.App.4th 503, 505 [81 Cal.Rptr.2d 647].)

[2] (*Community Release Bd. v. Superior Court, supra*, 91 Cal.App.3d at p. 815, fn. 1.)

[3] (*People v. Sutton, supra*, 113 Cal.App.3d at p. 164.)

[4] (*People v. Reyes, supra*, 212 Cal.App.3d at p. 858.)

[5] (*People v. Sherrick, supra*, 19 Cal.App.4th at p. 661.)

[6] All statutory references are to the Penal Code unless otherwise stated.

the attempted robberies pursuant to section 654, and by not making liability for victim restitution joint and several with a codefendant. We agree these errors were made.

Finally, Neely claims the trial court erred in calculating his sentence for the attempted robberies. A review of this contention, however, reveals more fundamental errors in Neely's sentence for the determinate term crimes. These errors highlight the complex and confusing procedures contained in the DSL (§ 1170 et seq.), which have frustrated and confused courts since its enactment in 1977. We add our voice to the voices of others who have commented on and attempted to explain the complexities of determinate sentencing.

We will remand to the trial court for resentencing on the determinate term crimes, order the sentence for one attempted robbery stayed pursuant to section 654, and order that Neely and his codefendant be held jointly and severally liable to pay victim restitution. Otherwise, we affirm.

## FACTS AND PROCEDURAL HISTORY

Oluwaseyi Awoleye and 18-year-old Johnny King were working in a cellular phone store owned by Awoleye. Neely, Brandon Meeks, and M.W. entered the store and yelled, "Get down, get down." Meeks walked up to Awoleye and pointed a gun at his head. Neely stood next to King and was also holding a gun. M.W. was between Neely and Meeks. M.W. stated, "You know what this is?"

Awoleye heard a gunshot and Johnny King fell to the ground fatally wounded. The three men ran out of the store. M.W. appeared to take some cell phone accessories from a display case before he left.

When the police arrived, Awoleye described the three men and told officers that he recognized M.W. as a former customer. The next day, Awoleye made a photo identification of Neely, Meeks, and M.W. as the three assailants.

The three men were located by police and arrested. In a search of Neely's residence, deputies found numerous pieces of wrapped and unwrapped rock cocaine. At the times of their arrests, Neely was 17 years old, Meeks was 18 and M.W. was 15.

After his arrest, M.W. confessed that he had participated in the murder and attempted robberies. Neely also admitted participation. Neely told sheriff's deputies that he was at Awoleye's store with M.W. and Meeks at the time of the murder and attempted robberies but that they intended only to rob the

store. Neely claimed he was the "look-out" and was unarmed. He stated that M.W. and the other person were carrying guns and that M.W. shot Johnny King.

Neely and codefendant Meeks were charged with first degree murder, attempted robbery of King, and attempted robbery of Awoleye; Neely was charged with possession of cocaine base for sale. The information alleged the special circumstance of murder during the commission of robbery (§ 190.2, subd. (a)(17)), as well as firearm enhancements (§ 12022.53, subds. (b), (c), (d), (e)(1)), and a gang enhancement (§ 186.22, subd. (b)(1)(A)). A jury convicted Neely of the crimes, and found the special circumstance allegation not true. In return for dismissal of the other firearm enhancements and gang enhancement, Neely admitted that a principal personally used a firearm in the murder and one attempted robbery. (§ 12022.53, subd. (b).)

Neely was sentenced to prison for a term of 36 years to life. The sentence consisted of 25 years to life for first degree murder, a consecutive term of 10 years for the firearm enhancement, a consecutive term of one year for the King attempted robbery, a concurrent term of three years for the Awoleye attempted robbery, and a concurrent term of four years for the drug offense.

## DISCUSSION

### *Substantial Evidence Supports King Attempted Robbery Conviction*

Neely contends there is insufficient evidence to support his conviction for the attempted robbery of Johnny King because King did not have actual or constructive possession of the property in the store. Neely concedes that employees are deemed to have constructive possession of property in their employer's place of business, but argues that King was not an employee of Awoleye. We disagree.

In evaluating a claim of insufficient evidence, we review the record in the light most favorable to the judgment to determine whether it discloses substantial evidence from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. (*People v. Snow* (2003) 30 Cal.4th 43, 66 [132 Cal.Rptr.2d 271, 65 P.3d 749].) All conflicts in the evidence are resolved in favor of the judgment and all reasonable inferences are drawn in its favor. (*People v. Rodriguez* (1999) 20 Cal.4th 1, 11 [82 Cal.Rptr.2d 413, 971 P.2d 618].)

■ Robbery requires "the felonious taking of personal property in the possession of another." (§ 211.) Possession may be either actual or constructive. (*People v. Nguyen* (2000) 24 Cal.4th 756, 761 [102 Cal.Rptr.2d 548,

14 P.3d 221].) ▮ For purposes of robbery, employees of a store not in actual possession are considered to have constructive possession of store property. Some appellate courts have held that all employees have constructive possession of business property based solely on the employment relationship while other courts limited constructive possession to employees whose duties gave them express or implied authority over the property. (*People v. Frazer* (2003) 106 Cal.App.4th 1105, 1115 [131 Cal.Rptr.2d 319], disapproved on other grounds in *People v. Scott* (2009) 45 Cal.4th 743, 746 [89 Cal.Rptr.3d 213, 200 P.3d 837]; *People v. Jones* (2000) 82 Cal.App.4th 485, 491 [98 Cal.Rptr.2d 329].) After the briefing in this case, our Supreme Court held that all employees constructively possess store property, even those whose duties do not involve authority over the property. (*Scott, supra*, at p. 752.)

Neely claims King was not an employee of any sort and was in the store at the time of the robbery as an invited visitor. (See *People v. Nguyen, supra*, 24 Cal.4th at pp. 761–762 [visitor not in constructive possession of store property].) We disagree. King's presence in the store performing services for the store, coupled with his relationship to the store owner, provided substantial evidence that he constructively possessed the store's property for purposes of the robbery statute.

King was not an "official" or "formal" employee, did not have regular hours, and was not paid on an hourly or weekly basis. But, King worked in the store and his services benefited the store's business. King came to the store almost every day during the two-month period preceding his murder and had a special relationship to Awoleye similar to that of an apprentice. (See *People v. Scott, supra*, 45 Cal.4th at pp. 753–754; *People v. Gilbeaux* (2003) 111 Cal.App.4th 515, 520–521 [3 Cal.Rptr.3d 835].) In particular, King had responsibility to assist customers buying ringtones, and received profits from the sale of ringtones as compensation.

### The M.W. Confession

Neely contends that the trial court erred by admitting hearsay evidence that M.W. had confessed to participating in the murder and attempted robberies. He argues that the evidence was irrelevant and prejudicial, and also that it was inadmissible under *Crawford v. Washington* (2004) 541 U.S. 36 [158 L.Ed.2d 177, 124 S.Ct. 1354]. We conclude that Neely forfeited his claim when trial counsel failed to object to admission of the evidence at trial.

During trial, Sheriff's Deputy Traci Gonzales testified that M.W. had confessed to her that he had been a participant in the crimes. Gonzales testified that M.W. had been arrested, and answered "yes" when asked: "Did

[M.W.] confess to you his participation in the crime?" No portion of the confession itself was admitted into evidence, and Gonzales was asked no further questions regarding the confession on direct or cross-examination.

Neely's trial counsel made no objection to admission of the testimony. In the absence of a specific and timely objection in the trial court, the issue is waived or forfeited on appeal. (*People v. Hinton* (2006) 37 Cal.4th 839, 893, fn. 19 [38 Cal.Rptr.3d 149, 126 P.3d 981] [failure to make Evid. Code, § 352 objection waives claim]; *People v. Alvarez* (1996) 14 Cal.4th 155, 186 [58 Cal.Rptr.2d 385, 926 P.2d 365] [failure to object on confrontation clause grounds waives claim].)

We will consider the issue on its merits, however, because Neely claims his counsel's failure to object constituted ineffective assistance. We conclude that there was no ineffective assistance of counsel, and that any arguably deficient performance was harmless beyond a reasonable doubt.

■ The general rule is that evidence regarding the guilty plea or conviction of a coparticipant in a crime is not admissible to prove guilt of a defendant. (*People v. Cummings* (1993) 4 Cal.4th 1233, 1322 [18 Cal.Rptr.2d 796, 850 P.2d 1]; *People v. Leonard* (1983) 34 Cal.3d 183, 188–189 [193 Cal.Rptr. 171, 666 P.2d 28].) The rationale for the rule is that a guilty plea or conviction of a participant is irrelevant to whether another person was positively and correctly identified as a coparticipant, and merely invites the inference of guilt by association. (*Cummings, supra*, at p. 1322; *Leonard, supra*, at pp. 188–189.) We will assume for purposes of argument that evidence of a confession by a coparticipant may have the same effect as evidence of a guilty plea or conviction.

■ In addition, an out-of-court testimonial statement offered for its truth against a criminal defendant is inadmissible unless the witness is unavailable and there has been a prior opportunity for cross-examination of the witness. (*Crawford v. Washington, supra*, 541 U.S. at pp. 53–54; see also *People v. Cage* (2007) 40 Cal.4th 965, 969 [56 Cal.Rptr.3d 789, 155 P.3d 205].) Testimonial hearsay has not been comprehensively defined but, unquestionably, a statement elicited from an arrestee during a police interrogation is testimonial. (*Crawford*, at pp. 68–69.) Although none of M.W.'s statements were admitted, *Crawford* issues cannot be circumvented by the admission of evidence referring to and disclosing a testimonial statement during a police interrogation. The Gonzales testimony was offered as a substitute for M.W.'s own words and for the truth of the general import of the confession.

■ Nevertheless, the conclusion that the testimony was inadmissible does not show ineffective assistance by counsel. To establish ineffective assistance,

a defendant must show counsel's conduct was both deficient and resulted in prejudice. (*Strickland v. Washington* (1984) 466 U.S. 668, 686–694 [80 L.Ed.2d 674, 104 S.Ct. 2052]; *People v. Mayfield* (1997) 14 Cal.4th 668, 783–784 [60 Cal.Rptr.2d 1, 928 P.2d 485]; *In re Harris* (1993) 5 Cal.4th 813, 832–833 [21 Cal.Rptr.2d 373, 855 P.2d 391].) Here, the record supports the conclusion that defense counsel may have had a valid tactical reason for not objecting to the testimony by Deputy Gonzales. (See *In re Cudjo* (1999) 20 Cal.4th 673, 692 [85 Cal.Rptr.2d 436, 977 P.2d 66] [tactical choices made after investigation of law and facts are "virtually unchallengeable"]; see also *People v. Leonard, supra,* 34 Cal.3d at pp. 187–189.)

Other evidence of Neely's guilt was overwhelming. Awoleye positively identified Neely, and Neely himself confessed to participation in the murder and attempted robberies. Because the evidence of Neely's guilt was strong, trial counsel reasonably focused on minimizing Neely's role in the crimes and shifting blame onto M.W. and Meeks. Counsel reasonably could conclude that evidence of M.W.'s confession might have been beneficial to Neely's defense because it identified another person who could be blamed for the actual shooting. Also, an objection to Deputy Gonzales's testimony may have resulted in further testimony on the subject contrary to Neely's interests.

Even if counsel's performance is deemed deficient, Neely cannot show prejudice. The standard for prejudice is a reasonable probability that, but for counsel's error, the verdict would have been different. (*Strickland v. Washington, supra,* 466 U.S. at pp. 691–694; *People v. Mayfield, supra,* 14 Cal.4th at pp. 783–784; *In re Harris, supra,* 5 Cal.4th at pp. 832–833.) As we have stated, evidence of Neely's guilt apart from M.W.'s confession was clear and compelling. There is no reasonable probability that the verdict would have been more favorable to Neely had the evidence of M.W.'s confession been excluded as irrelevant and prejudicial. Similarly, any error under *Crawford* was harmless beyond a reasonable doubt. (*Chapman v. California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 87 S.Ct. 824]; *People v. Geier* (2007) 41 Cal.4th 555, 608 [61 Cal.Rptr.3d 580, 161 P.3d 104].)

*Sentencing Errors*

1. *Unauthorized Sentence on Determinate Term Crimes*

Neely claims the trial court erred in the sentencing of both attempted robberies. We agree that the trial court imposed an incorrect and unauthorized sentence and that a remand is required.

The trial court imposed a one-year consecutive sentence for the King attempted robbery and a three-year concurrent sentence for the Awoleye

attempted robbery. The minute order describes the one-year King attempted robbery sentence as one-third of the middle term, and the three-year Awoleye attempted robbery sentence as the middle term.

■ Both sentences are based on the trial court's incorrect selection of the length of the middle term. Although attempts to commit a felony punishable under the DSL are normally punished by one-half of the term prescribed for a completed crime (§ 664, subd. (a)), the punishment for attempted second degree robbery is an exception to the rule. Section 213, subdivision (b), when combined with section 18, provides that attempted second degree robbery is punishable by 16 months, two years, or three years in state prison. One-third of the middle term, therefore, is eight months, not one year.

Neely contends that the sentences should be corrected by directing the trial court to impose an eight-month consecutive sentence for the King attempted robbery (one-third of the correct middle term) and a two-year concurrent sentence for the Awoleye attempted robbery (the correct middle term). As respondent argues, however, the trial court made more fundamental sentencing errors and the relief sought by Neely would result in a slightly different but still unauthorized sentence.

■ Neely was convicted of first degree murder, a crime punishable by an indeterminate term of imprisonment, as well as two attempted robberies and a drug offense, crimes punishable by determinate terms. Indeterminate term crimes and determinate term crimes are subject to two different sentencing schemes. Sentencing for the indeterminate crime of murder is governed by section 190, and sentencing for the determinate term crimes is governed by sections 1170 and 1170.1. Sentencing under these two sentencing schemes must be performed separately and independently of each other. (*People v. Garza* (2003) 107 Cal.App.4th 1081, 1094 [132 Cal.Rptr.2d 831].) Only after each is determined are they added together to form the aggregate term of imprisonment.

■ Here, the trial court failed to sentence Neely for crimes punishable by imposition of determinate terms separately from the crimes punishable by imposition of an indeterminate term. Specifically, the court erroneously applied the principal term/subordinate term methodology set forth in section 1170.1 to all of the offenses. When it imposed a consecutive one-third of the middle term sentence for the King attempted robbery, the court in effect was designating the murder as the principal term under section 1170.1.

■ Section 1170.1 sets forth the sentencing protocol for felony offenses for which a determinate low, middle or upper term of incarceration is imposed. It also sets forth the rules for imposing a consecutive sentence

through the designation of "principal" and "subordinate" terms. First, the trial court is required to select a base term—either the statutory low, middle or upper term—for each of the crimes. (§ 1170; Cal. Rules of Court, rule 4.405(2).) Second, if the court determines that a consecutive sentence is merited, it must designate the crime with the "greatest" selected base term as the principal term and the other crimes as subordinate terms. (§ 1170.1, subd. (a).) Third, the court sentences the defendant to the full base term it selected for the principal term crime and one-third of the middle term for any crimes for which the sentence is ordered to run consecutively. (*Ibid.*; see *People v. Felix* (2000) 22 Cal.4th 651, 655 [94 Cal.Rptr.2d 54, 995 P.2d 186].) A subordinate term is one-third of the *middle term* even if the trial court had initially selected the lower or upper term as the base term.

Further guidance for determinate sentencing is provided in division 5 of title 4 of the California Rules of Court. Rules 4.420 through 4.425 specifically address the methodology for selection of a term of imprisonment, determination of whether sentences will run concurrently or consecutively, and the decision to impose a consecutive sentence.

■ Offenses for which an indeterminate sentence of life imprisonment or death can be imposed are not subject to section 1170.1. Consequently there are no principal and subordinate terms to be selected. (§ 1168, subd. (b).) The court simply imposes the statutory term of imprisonment for the indeterminate sentence crime, which in this case is 25 years to life. (§ 190, subd. (a).)

Once the court determines what sentence is to be imposed for the indeterminate term offenses and the determinate term offenses, it combines the two to reach an aggregate total sentence. Nothing in the sentencing for the determinate term crimes is affected by the sentence for the indeterminate term crime.

Such sentencing has been conceptualized as sentencing in separate boxes. (*People v. Ottombrino* (1982) 127 Cal.App.3d 574, 588, fn. 4 [179 Cal.Rptr. 676], disapproved on other grounds in *People v. Belmontes* (1983) 34 Cal.3d 335, 345 [193 Cal.Rptr. 882, 667 P.2d 686].) Applying this "box" analogy to the instant case, the indeterminate term crime of first degree murder is placed in one box. The court imposes the required 25-year-to-life sentence and, in the same box, adds any enhancements to that sentence. The total sentence in the indeterminate term box is 25 years to life for the murder plus 10 years for the firearm enhancement.

A second box is created to include the three determinate sentence crimes. Applying section 1170.1, the court would select a base term for each of the crimes, set the crime with the greatest base term as the principal term, impose

the full base term as the sentence for the principal term crime, and impose one-third of the middle term as a consecutive sentence for any subordinate term crimes. Should the court choose to run one or more of the determinate terms concurrently, it would impose the full selected base term and order it to be served concurrently with the principal term. In this case, the greatest base term was the four-year middle term selected for the drug crime. That crime would have been designated the principal term and received a full four-year sentence. The consecutive sentence for the King attempted robbery would have been eight months (one-third of the two-year middle term).

After these calculations, the second box would be complete and contain the total sentence for all the determinate sentence crimes. The court would add the term of the second box to the term of the first box to arrive at the total aggregate sentence.[7]

The trial court's errors occurred in the second box. Although the court selected a base term for each of the crimes, it chose the wrong middle term for the attempted robberies. The error was compounded when the court reopened the completed first box and designated the indeterminate murder term in the second box as the principal term for the determinate sentence crimes. This error inevitably resulted in additional errors in the determinate sentencing process and in the resulting aggregate sentence.

To permit correction of the trial court's errors, the case must be remanded for resentencing. Moreover, because the trial court misapplied the sentencing rules for crimes subject to different sentencing schemes, the trial court must be given the opportunity to revise all of its discretionary sentencing choices for the determinate term crimes. (*People v. Burbine* (2003) 106 Cal.App.4th 1250, 1258 [131 Cal.Rptr.2d 628].) On remand, the trial court will have discretion to set base terms for both attempted robberies and the drug crime, appropriately designate the greatest base term as the principal offense, determine whether to impose consecutive or concurrent sentences for each of the crimes as permitted by law, and determine whether the aggregate determinate term will run concurrently with or consecutively to the indeterminate term.

 Neely contends that a defendant may not be subject to an aggregate sentence that is greater than initially imposed when a case is remanded for resentencing. (*People v. Hanson* (2000) 23 Cal.4th 355, 363–366 [97

---

[7] There may be cases where more than two "boxes" would be created. For example, had there been convictions for violent sex crimes sentenced pursuant to section 667.6, subdivision (c) or (d), the trial court would create a third box and add the sum of those sentences to the sums computed in the other two boxes. (*People v. Belmontes, supra*, 34 Cal.3d at pp. 344–346.)

Cal.Rptr.2d 58, 1 P.3d 650]; *People v. Craig* (1998) 66 Cal.App.4th 1444, 1447 [78 Cal.Rptr.2d 659].) But the sentence imposed by the trial court is a legally unauthorized sentence. (*People v. Scott* (1994) 9 Cal.4th 331, 354 [36 Cal.Rptr.2d 627, 885 P.2d 1040].) A more severe sentence may be imposed following a successful appeal if the initial sentence was unlawful or unauthorized. (*Craig*, at p. 1449.)

## 2. Section 654 Requires Stay of King Attempted Robbery Sentence

 Neely contends that his sentence for the attempted robbery of King must be stayed pursuant to section 654. Respondent concedes, and we agree. Section 654 bars separate punishment for multiple offenses arising out of a single, indivisible course of action. Here, the evidence supports the prosecution theory that the murder was committed as part of the attempted robberies. (*People v. Hayes* (1990) 52 Cal.3d 577, 646 [276 Cal.Rptr. 874, 802 P.2d 376]; *People v. Boyd* (1990) 222 Cal.App.3d 541, 575–576 [271 Cal.Rptr. 738].)

## 3. Restitution Liability Should Be Joint and Several

 Neely also contends the abstract of judgment should be corrected to provide that his liability to pay the $7,500 restitution order should be a "joint and several" liability with Meeks. The prosecution concedes, and we agree. The trial court is required to order restitution to crime victims, and the court has authority to make the obligation of multiple codefendants joint and several. (§ 1202.4, subd. (f); *People v. Blackburn* (1999) 72 Cal.App.4th 1520, 1535 [86 Cal.Rptr.2d 134].) Here, the prosecutor requested joint and several liability on the part of Neely and Meeks, and the trial court agreed. The minute order and abstract of judgment, however, do not reflect the joint and several nature of the liability. We will order modification of the judgment to expressly state that the restitution order is joint and several as to Neely and Meeks.

## DISPOSITION

We vacate the sentence for the two attempted robberies and possession of cocaine base for sale. The trial court is instructed to hold a new sentencing hearing in which it shall impose the lower, middle, or upper term for those crimes, select principal and subordinate terms consistent with this opinion, and recalculate the total determinate sentence. Thereafter it shall determine if the determinate term is to be concurrent with or consecutive to the indeterminate term. We also instruct the trial court to designate that the liability of

Neely and codefendant Meeks to pay the restitution fine is joint and several. In all other respects the judgment is affirmed.

Gilbert, P. J., and Coffee, J., concurred.

Appellant's petition for review by the Supreme Court was denied November 10, 2009, S176214.