Filed 3/11/22  P. v. Saechao CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | C091327 |
| v. | (Super. Ct. No. 18FE014155) |
| LAI FOU SAECHAO, | |
| Defendant and Appellant. | |

Defendant Lai Fou Saechao and his nephew David Saechao[1] entered the residence of Guofang Wang.  When Wang surprised them, they killed him.  A jury convicted defendant of first degree felony murder (murder committed during a burglary) and the trial court sentenced him to life without the possibility of parole.

Defendant now contends (1) the evidence was insufficient to sustain a first degree murder conviction based on a felony-murder theory, (2) the trial court erred in not instructing the jury on the elements of theft, the intended felony supporting the predicate felony of burglary, and (3) imposing a sentence of life without the possibility of parole is

---

[1] We will refer to David by his first name for clarity.

1

unlawful in this case because the same facts used to find defendant guilty of felony murder were also used to find true the felony-murder special circumstance.

We conclude (1) the evidence was sufficient for the jury to conclude defendant was an actual killer and therefore guilty of first degree murder based on a felony-murder theory, (2) any error in not instructing the jury on the elements of theft was harmless because, beyond a reasonable doubt, it did not contribute to the verdict, and (3) imposing a sentence of life without the possibility of parole did not violate dual use prohibitions or constitutional principles.

We will affirm the judgment.

BACKGROUND

*Crime Scene Evidence and Autopsy*

The victim, Guofang Wang, lived in Sacramento and grew marijuana in his Burns Way residence. Two of his acquaintances went to his house late at night, entered the unlocked front door, and found him deceased on the floor, with a cord wrapped loosely around his ankles. Wang lay on his left side, facing down, with his arms under him, wearing only his underwear. His face was heavily battered, and blood pooled around his head. His hands were not bound, but they were in a position that made it appear they had been bound. The interior of the residence had been ransacked.

Defendant's DNA was found in blood on the front security doorjamb of the Burns Way house. Also, defendant's DNA was found in blood scraped from under Wang's fingernails.

DNA from David, who was a codefendant but is not involved in this appeal, was found in blood collected from several places at Wang's residence, including the driveway, living room, and kitchen. David's blood was also found on an unhinged door leaning over Wang's body and the cord wrapped around Wang's ankles. On Wang's body, David's DNA was found on a bruise on Wang's shoulder, on Wang's neck, and in blood and debris scraped from under Wang's fingernails.

2

The coroner determined that Wang had extensive blunt force injuries to his forehead, face (including eyes, nose, lips, and cheek), ear, neck, chest, torso, back, hip, arms, hands, legs, and feet. Wang's face was swollen, with his eyes blackened and swollen shut. Wang had injuries and fractures to his neck area attributable to neck compression. In all, the injuries were consistent with being punched and kicked repeatedly in the head and body and with manual strangulation. The coroner concluded Wang died of blunt force injuries and neck compression.

*David's Statements and Testimony*

Twenty-five days after Wang's death, David walked into the lobby of the Sacramento County Jail and told a deputy he had killed someone. David told the deputy he went into a marijuana grow house where he was attacked by an Asian male. David fought back, and the person bit David on the finger and forearm. Detectives interviewed David. He told them he thought no one was home at the grow house, so he went inside to steal equipment. He had injuries consistent with being bitten on the finger and forearm. David did not mention that defendant was with him at the house.

David testified at the joint trial with defendant. He owed defendant money. He went to the Burns Way house by himself to steal marijuana-growing equipment. Once inside, he saw equipment, so he called defendant and told defendant to come over to the Burns Way house if he wanted his money. After he made the call, someone yanked him down from behind. David ran, but the man caught up to him in the living room, where they wrestled, and the man bit him. David hit the man a few times to get him to let go. When the man let go, David ran to the front door, where the man caught up to him again. While they were struggling, defendant appeared and helped get the man off of David. Defendant and David both left in their cars. As David left the house, he saw the victim getting up off the floor. David later saw on the news that someone had died at the Burns Way house, so he turned himself in, even though he did not kill the man. According to

3

David's testimony at trial, he told the deputy he had committed a burglary, not that he had killed someone. For a period of time before trial, defendant and David shared a cell.

*Statements and Testimony of Defendant*

Detectives interviewed defendant. They asked him whether he knew Wang or had ever been at the Burns Way house. Defendant denied both. They asked why defendant's blood would have been found at the Burns Way house, and defendant said he did not know.

At trial, however, defendant testified that he went to the Burns Way house because David called him and offered to pay back the money he owed. When defendant arrived, he saw a man choking David on the porch area at the front door. Defendant grabbed at the man's arm and the man fell backward. David told defendant to leave, so defendant ran to his car and left. Defendant noticed later that he had been scratched on his arm. He testified he lied when interviewed by detectives because he was afraid of getting in trouble. He had no idea David was burglarizing the Burns Way house.

*Conviction and Sentencing*

The jury convicted defendant of first degree murder on a felony-murder theory and found true the special circumstance that defendant committed the murder while engaged in the commission or attempted commission of burglary. (Penal Code, §§ 187. subd. (a); 190.2, subd. (a)(17)(G).)[2] The trial court imposed a sentence of life without the possibility of parole.

DISCUSSION

I

Defendant contends the evidence was insufficient to sustain a first degree murder verdict based on a felony-murder theory. Specifically, he argues the evidence does not

---

[2] Undesignated statutory references are to the Penal Code.

4

support a finding defendant was the actual killer or aided and abetted commission of first degree murder with intent to kill or was a major participant in the burglary and acted with reckless indifference to human life. (§ 189, subd. (e); Stats. 2018, ch. 1015, § 3 (Senate Bill No. 1437 (2017-2018 Reg. Sess.).).)

"The proper test for determining a claim of insufficiency of evidence in a criminal case is whether, on the entire record, a rational trier of fact could find the defendant guilty beyond a reasonable doubt. [Citations.] On appeal, we must view the evidence in the light most favorable to the People and must presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. [Citation.]

"Although we must ensure the evidence is reasonable, credible, and of solid value, nonetheless it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts on which that determination depends. [Citation.] Thus, if the verdict is supported by substantial evidence, we must accord due deference to the trier of fact and not substitute our evaluation of a witness's credibility for that of the fact finder. [Citations.]" (*People v. Jones* (1990) 51 Cal.3d 294, 314 (*Jones*).)

Although the parties cite to and focus on arguments made by the prosecutor concerning the evidence, we review the evidence, not the prosecutor's view of the evidence or the prosecutor's arguments to the jury, to determine the sufficiency of the evidence. (*People v. Perez* (1992) 2 Cal.4th 1117, 1126.)

Effective January 1, 2019, the felony-murder rule was changed. A person now may be convicted of first degree murder under the felony-murder rule only if the person (1) was the actual killer or (2) aided and abetted the actual killer in commission of first degree murder with intent to kill or (3) was a major participant in the underlying felony and acted with reckless indifference to human life. (§ 189, subd. (e); *People v. Johns* (2020) 50 Cal.App.5th 46, 58-59.)

5

The term "actual killer" is literal. "The actual killer is the person who personally kills the victim, whether by shooting, stabbing, or [other means]." (*People v. Garcia* (2020) 46 Cal.App.5th 123, 152.) But there can be more than one "actual killer" if more than one person committed acts that contributed to the death. (See *People v. Pock* (1993) 19 Cal.App.4th 1263, 1274-1275 [two perpetrators, including the defendant, shot the victim].) For example, a perpetrator who handed the killer duct tape with which the killer asphyxiated the victim was not an actual killer because the act of handing the killer duct tape was not an actual cause of the death. (*Garcia,* at p. 194.) However, a jury could find that both perpetrators were actual killers when both perpetrators shot the victim, causing death. (See *Pock,* at p. 1275 [discussing actual killer *and* major participant liability].)

Here, the autopsy showed that Wang was severely beaten and strangled. The cause of death, according to the coroner, was "blunt force injuries and neck compression." The coroner did not testify that there was one fatal act, such as a particular death-causing blow or act of strangulation. Thus, Wang died as a result of multiple acts committed against him, an accumulation of blows and strangulation.

From the evidence, the jury could reasonably conclude defendant entered the residence with David, was confronted by Wang, and participated in beating Wang to death, even if there was evidence David also inflicted injuries that contributed to Wang's death. Defendant's blood was under Wang's fingernails and by the front door, supporting a reasonable inference that defendant participated in the beating that resulted in Wang's death. Also, the number and severity of Wang's injuries support a reasonable inference more than one person attacked him. We therefore conclude there was substantial evidence defendant was an actual killer even though he may not have been the sole killer.

Defendant claims the evidence showed David committed the acts resulting in Wang's death. According to defendant, David admitted killing someone, and his DNA

6

was found in many places on and around Wang's body. David said he entered the Burns Way house to steal equipment. Whereas the evidence implicating defendant was far less detailed, according to defendant. Defendant claims he merely freed David from Wang's grasp and left.

But we must view the evidence, and draw all reasonable inferences, in the light most favorable to the judgment. (*Jones, supra*, 51 Cal.3d at p. 314.) The evidence supports a reasonable inference defendant was involved in the deadly beating of Wang, as defendant was injured during the beating and Wang had defendant's blood under his fingernails. Although we do not disagree with defendant's argument that overwhelming evidence showed David killed Mr. Wang, that does not exonerate defendant. As we have explained, there can be more than one actual killer, and this case fits that description because Wang died from multiple acts of blunt force and strangulation.

Because there was sufficient evidence for the jury to conclude defendant was an actual killer who killed while committing burglary, he could be convicted of first degree murder under a felony-murder theory (§ 189, subd. (e)), and we need not determine whether he aided and abetted the actual killer in commission of first degree murder with intent to kill or was a major participant in the underlying felony and acted with reckless indifference to human life.

II

Defendant next contends the trial court erred in not instructing the jury on the elements of theft, the intended felony supporting the predicate felony of burglary.

The trial court properly instructed the jury on the elements of felony murder based on burglary and properly instructed the jury on the elements of burglary as a predicate felony to felony murder; however, the trial court did not instruct the jury on the elements of theft in relation to defendant's intent when he entered the Burns Way house.

7

Concerning burglary, the trial court instructed: "To prove that a defendant committed burglary, the People must prove that the defendant entered a house and when he entered the house, he intended to commit theft. . . ."

Defendant argues it was error not to give the jury instructions on the elements of theft, which are taking possession of property owned by another, without the owner's consent and with the intent to permanently deprive the owner of the property, and asporting the property. (CALCRIM No. 1800.) He asserts the theft instruction was required because, without defendant's intent to commit theft when he entered the Burns Way house, defendant did not commit burglary and is not criminally liable for felony murder. (See *People v. Hughes* (2002) 27 Cal.4th 287, 349 [holding trial court must instruct on elements of target offense relating to burglary].) The Attorney General responds that the trial court did not have a duty to instruct on theft because the information did not charge a burglary; instead, burglary was simply the predicate felony of the felony murder count. (See *People v. Valdez* (2004) 32 Cal.4th 73, 110-111 (*Valdez*) [holding trial court has no duty to instruct on lesser-included offense of theft when robbery is alleged as the predicate felony for felony murder].)

We agree with defendant that the trial court had a duty to instruct the jury on the elements of theft because the jury had to determine whether defendant entered the Burns Way house with intent to commit theft. *Valdez, supra*, 32 Cal.4th 73 is inapposite because in that case, the instructions on the uncharged crime of robbery as a predicate felony were complete without reference to the lesser-included offense of theft. Here, on the other hand, the instructions on burglary as a predicate felony necessitated an instruction on theft because knowledge of the elements of theft was essential to the jury's determination of whether defendant entered the Burns Way house with intent to commit theft.

Omission of an element when instructing the jury on a crime is not a structural defect but instead raises whether the omission, beyond a reasonable doubt, did not

8

contribute to the jury's guilty verdict. (*People v. Flood* (1998) 18 Cal.4th 470, 494.) " 'To say that an error did not contribute to the verdict is . . . to find that error unimportant in relation to everything else the jury considered on the issue in question, as revealed in the record.' [Citation]." (*Ibid.*)

Defendant argues the error contributed to the jury's guilty verdict because there was evidence defendant was not with David when David entered the house and did not share David's intent to permanently deprive Wang of the equipment. For these arguments, defendant relies on his own statements and testimony and David's statements and testimony. But it is apparent the jury did not believe the self-serving aspects of the statements and testimony of defendant and David.

Furthermore, theft is a commonly-understood term. Theft means taking something that belongs to someone else. (See *People v. Parson* (2008) 44 Cal.4th 332, 352 [stating that the related word "steal" has a "fixed and well-defined meaning"].) The only element of theft that may not be as well-known is that the perpetrator intended to *permanently* deprive the owner of the property. (CALCRIM No. 1800.) But here, there can be no argument defendant entered the Burns Way house to temporarily deprive Wang of property. There was no evidence to support such an inference. The trial court instructed the jury that, to constitute burglary, the defendant must have entered the house intending to commit theft. An instruction on the elements of theft would not have changed the jury's verdict.

Considering the evidence of the attack on Wang in his home and the presence of defendant's DNA on Wang and in his home, the well-known meaning of "theft," and the jury's rejection of the self-serving aspects of the statements and testimony of David and defendant, we conclude the trial court's error in not instructing the jury on the elements of theft did not contribute to the verdict, beyond a reasonable doubt.

9

Defendant further claims that imposing a sentence of life without the possibility of parole is unlawful in this case because the same facts used to find defendant guilty of felony murder were also used to find true the felony-murder special circumstance. He argues this constitutes a prohibited dual use of facts based on California law and constitutional double jeopardy protections.

Some background on special-circumstance and felony-murder law will be helpful in understanding defendant's argument. The United State Supreme Court held that the death penalty cannot constitutionally be imposed on a nonkiller aider and abettor unless that person either intended to kill or was a major participant who acted with reckless indifference to human life. (*Tison v. Arizona* (1987) 481 U.S. 137, 158 [95 L.Ed.2d 127] (*Tison*).) Thus, a person can be subject to the death penalty only if the person was the actual killer or aided and abetted commission of first degree murder with intent to kill or was a major participant in a dangerous felony and acted with recklessness indifference to human life. We refer to these factors as the *Tison* factors.

The *Tison* factors were codified in California in section 190.2, subdivisions (c) and (d), by the electorate as part of Proposition 115, and they apply to both the imposition of the death penalty, and life without the possibility of parole, as a result of a special-circumstance finding. (*People v. Banks* (2015) 61 Cal.4th 788, 797-798, 804.)

In 2018, the Legislature amended the law with respect to felony-murder convictions, requiring a finding of one of the three *Tison* factors as a prerequisite to a felony-murder conviction. (§ 189, subd. (e); Senate Bill No. 1437.) Thus, under current law, a finding of one of the three *Tison* factors is a prerequisite to a first degree murder conviction on a felony-murder theory (§ 189, subd. (e)) *and* a true finding of a special circumstance (§ 190.2, subds. (b), (c), & (d)).

Here, the jury found defendant guilty of felony murder (while engaged in a burglary), which required that the jury find true one of the *Tison* factors. (§ 189,

subd. (e).)  The jury also found true the burglary special circumstance, which also required a finding of a *Tison* factor.  (§ 190.2, subds. (b) & (c).)  As we have noted, there was sufficient evidence defendant was an actual killer.

We consider first whether dual use of the same facts to find defendant guilty of felony murder and to find true the special circumstance violates constitutional double jeopardy protections.  The answer is no.  (*People v. Lewis* (2001) 25 Cal.4th 610, 676 & cases cited therein.)  The California Supreme Court has rejected this contention several times.  (See *Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455.)

Next we address whether the Legislature intended to allow dual use of facts to find defendant guilty of felony murder and to find true the special circumstance.  Defendant argues the Legislature did not intend for elements of the murder conviction to also be used to aggravate the sentence because (1) the law generally prohibits dual use of facts to both establish an element of an offense and impose an aggravated sentence, and (2) the amendment to section 189 requiring a finding of a *Tison* factor before convicting of felony murder showed the Legislature meant to narrow liability for felony murder.  In support of his argument, defendant cites rule 4.420(d) of the California Rules of Court, as well as *In re Shull* (1944) 23 Cal.2d 745 (*Shull*).

Rule 4.420(d) provides:  "A fact that is an element of the crime on which punishment is being imposed may not be used to impose a particular term."  This rule, however, is meant to guide the trial court with respect to the determinate sentencing law.  (Cal. Rules of Court, rule 4.420, Advisory Committee Comment; see also § 1170, subd. (b) [giving trial court discretion to choose one of three possible terms under determinate sentencing law].)  Section 190.2, concerning special circumstances, is not part of the determinate sentencing law, but instead relates to indeterminate sentencing.  The prohibition on dual use of facts in rule 4.420(d) does not apply to indeterminate sentencing.  (See *People v. Neely* (2009) 176 Cal.App.4th 787, 798 [rule 4.420 pertains to determinate sentencing].)

11

*Shull* also does not help defendant. In that case, the defendant was convicted of assault with a deadly weapon, for which the trial court sentenced him to 10 years. But the trial court also added another five years for use of a deadly weapon under an enhancement statute in effect at the time. The California Supreme Court determined that the Legislature did not intend imposition of the five additional years in such a case because assault with a deadly weapon was a specific provision proscribing a specific kind of crime, while the enhancement statute was only a general statute applicable to all crimes. Applying the rule that specific statutes control over general statutes, the court reversed the five-year enhancement. (*Shull, supra*, 23 Cal.2d at pp. 750-751.)

Defendant has not established that the Legislature meant to prohibit a dual use of facts. There is no prohibition on using the *Tison* factors both to find a defendant guilty of felony murder and to impose a sentence of life without the possibility of parole based on a special-circumstance finding.

## DISPOSITION

The judgment is affirmed.

_____/S/_____
MAURO, J.

We concur:

_____/S/_____
HULL, Acting P. J.

_____/S/_____
HOCH, J.

12