Filed 10/9/13  P. v. Rodriguez CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B242515 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. PA066395) |
| v. | |
| JULIO RODRIGUEZ, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Harvey Giss, Judge.  Affirmed in part; remanded in part.

Angela Berry-Jacoby, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Steven D. Matthews and Timothy M. Weiner, Deputy Attorneys General, for Plaintiff and Respondent.

\* \* \* \* \* \*

Julio Rodriguez challenges the judgment of conviction for the first degree murder of Larry Duran and for possession of a firearm by a felon.  (Pen. Code, § 187 & former § 12021, subd. (a)(1).)  The evidence against him on both charges was overwhelming, and he demonstrates no error.  Respondent correctly identifies a sentencing error with respect to the determinate term for possession of a firearm by a felon.  We affirm the judgment and remand the case for resentencing on the possession conviction.

**FACTS AND PROCEDURE**

In November 2009, defendant lived with his fiancée Kristian M. and dated his girlfriend Sandra H.  Defendant believed Kristian cheated on him with Duran and beginning in June 2009, defendant accused Kristian of the perceived misconduct.  Starting in approximately September 2009, defendant called and sent texts to Duran's fiancée Lisa A. warning her that Duran was "messing with" Kristian.  These calls and texts were made from Duran's cell phone, which defendant previously had stolen from Duran.  Defendant called and texted numerous times, sometimes daily and sometimes more than once a day.  In addition to Kristian and Lisa, defendant told Duran's colleagues Manuel R. and Irma R. that Kristian and Duran were romantically involved.  Defendant told Irma that he wanted to fight Duran so that everything would "be over."

On November 28, 2009, defendant went to the barber shop where Duran worked.  Defendant invited Irma on date, telling her they needed to go out that day because "after no one will want to talk to me."  At defendant's urging, Duran left the barber shop with defendant, who drove a grey Ford Focus he had borrowed from Sandra.  Duran's colleague Eric S. understood that defendant and Duran were leaving the barber shop to fight.  Shortly afterwards, Duran was found dead in an alley close to the barber shop.  Duran died of multiple gunshot wounds.

Two people, who had been moving boxes in the alley, heard shots in rapid succession and then saw a grey or silver car speed out of the alley where Duran's body

2

was found.[1] A few days after Duran was killed, Sandra reported her car missing, and she also reported that a gun that had been inside the vehicle was missing. The gun taken from Sandra's car was not the one used to shoot Duran. Sandra's car eventually was recovered, but the gun was never returned to Sandra.

Two days after Duran's killing, on November 30, 2009, defendant sought shelter from his former neighbor Carlos T. Defendant told Carlos that he needed a place to stay because police were searching for him. Defendant was carrying a firearm. Carlos did not allow defendant to stay in his home, in part, because defendant was carrying a firearm. Defendant then fled to El Salvador.

After Duran's killing, Lisa went to the coroner's office and found the cell phone defendant had stolen from Duran in Duran's pocket. When defendant's vehicle was searched, the following letter in his handwriting was found: "To my baby girls, I love you girls so much. I am sorry if I'm not around and sorry for letting Kristian get to me. She's the one that made me go away. Please don't ever play with someone's head. You girls will be good and very pretty and become someone in life if you girls . . . only knew why I did kill myself. It's because I know no matter if cops pull me over or they took me in I would not see you girls again for more than 30 years. So I did the same thing that they would do, take me away from you girls. I love you girls. I will always be in your hearts."

Sandra assisted authorities in persuading defendant to return to Los Angeles, where he was arrested at the airport. Prior to his arrest, he wore a baseball cap, borrowed sunglasses, and a borrowed women's jacket.

The parties stipulated defendant was convicted of a felony prior to November 28, 2009.

---

[1] Another person saw a different car leave the alley after hearing gunshots. He only saw the back of the car and was not certain of its color but believed the taillights were different from those on Sandra's vehicle.

Defendant's defense was that tire tracks found in the alley where Duran died did not match Sandra's Ford Focus. Defendant's expert acknowledged that the Ford could have travelled through the alley without leaving tire tracks. Additionally, defendant's friend testified that defendant's suicide note was found before October 31, 2009.

Jurors convicted defendant of first degree murder and found true the allegation that defendant personally and intentionally discharged a firearm causing death to Duran within the meaning of Penal Code section 12022.53, subdivision (d). Jurors also found true the allegation that defendant, a felon, possessed a firearm. The court sentenced defendant to a 50-year-to-life indeterminate term for the first degree murder and the finding defendant personally and intentionally discharged a firearm causing death. The court sentenced defendant to eight months for the possession charge, which was comprised of one-third the midterm for that offense. Defendant timely appealed.

## DISCUSSION

Defendant argues that the murder charge should have been tried separately from the possession charge. Defendant also argues the prosecutor committed prejudicial misconduct. Respondent argues the trial court erred in calculating defendant's determinate sentence. As we explain, only respondent's argument has merit.

### 1. Severance

The trial court found that it would be inappropriate to sever the possession charge because evidence to prove the two charges overlapped. Appellant argues severance was necessary to protect his due process rights. As we explain, we disagree.

Joinder of charges is "preferred" because it promotes efficiency. (*People v. Hartsch* (2010) 49 Cal.4th 472, 493 (*Hartsch*).) "A defendant, to establish error in a trial court's ruling declining to sever properly joined charges, must make a '"clear showing of prejudice to establish that the trial court abused its discretion . . . ."' [Citations.] A trial court's denial of a motion to sever properly joined charged offenses amounts to a prejudicial abuse of discretion only if that ruling '"""falls outside the bounds of reason."""' [Citation.]" (*People v. Soper* (2009) 45 Cal.4th 759, 774 (*Soper*).)

4

To determine whether severance was required, "[f]irst, we consider the cross-admissibility of the evidence in hypothetical separate trials.  [Citation.]  If the evidence underlying the charges in question would be cross-admissible, that factor alone is normally sufficient to dispel any suggestion of prejudice and to justify a trial court's refusal to sever properly joined charges.  [Citation.]  Moreover, even if the evidence underlying these charges would not be cross-admissible in hypothetical separate trials, that determination would not itself establish prejudice or an abuse of discretion by the trial court in declining to sever properly joined charges.  [Citation.]"  (*Soper*, *supra*, 45 Cal.4th at pp. 774-775, italics omitted.)  If a reviewing court determines the evidence underlying properly joined charges would not be cross-admissible, it then considers "'whether the benefits of joinder were sufficiently substantial to outweigh the possible "spill-over" effect of the "other-crimes" evidence on the jury in its consideration of the evidence of defendant's guilt of each set of offenses.'  [Citations.]  In making that assessment, [the reviewing court considers] three additional factors, any of which—combined with [the] earlier determination of absence of cross-admissibility—might establish an abuse of the trial court's discretion:  (1) whether some of the charges are particularly likely to inflame the jury against the defendant; (2) whether a weak case has been joined with a strong case or another weak case so that the totality of the evidence may alter the outcome as to some or all of the charges; or (3) whether one of the charges (but not another) is a capital offense, or the joinder of the charges converts the matter into a capital case."  (*Id.* at p. 775, italics omitted.)  The reviewing court then balances the potential for prejudice to the defendant from a trial of properly joined charges against the countervailing benefits to the state, bearing in mind that the state's interest in joinder gives a trial court broader discretion to deny a motion to sever properly joined charges than it has to admit evidence of uncharged offenses in a separate trial.  (*Id*. at p. 775 & fn. 7.)

Here, evidence would have been cross-admissible in hypothetically separate trials.  The possession offense and the murder were connected.  The prosecutor argued that the possession charge was based either on defendant's use of a firearm to kill Duran – which

5

was exactly the same as the murder charge – or defendant's possession of a gun when he spoke to Carlos. The latter is related to the murder because defendant spoke to Carlos to request a place to hide from police. Evidence of the murder weapon obviously was cross-admissible and evidence of the conversation with Carlos was relevant because it showed defendant's effort to flee from officers after the murder.

Even if the evidence was not cross-admissible in hypothetically separate trials, the benefits of joinder outweighed the possible "spill over" effect of other crimes evidence. The joinder of the possession of a firearm was not likely to inflame the jury against the defendant in a murder trial, especially because the murder was committed with a firearm. A strong case was not joined with a weak case. Evidence of both the murder and the gun charge was overwhelming and defense counsel even admitted the latter.[2] The following evidence overwhelmingly supported the first degree murder conviction. For months, defendant obsessed about his belief that his fiancée was unfaithful with Duran. Defendant went to Duran's place of work to fight him. Duran was seen entering the vehicle defendant was driving just before the killing and the vehicle defendant was driving was seen speeding out of the alley where Duran's body was found. Defendant left a note suggesting that he would be put away for a long time. Defendant sought shelter from Carlos to hide from police and then fled to El Salvador. When he returned to Los Angeles, defendant borrowed clothing to disguise his appearance.

Finally, this was not a capital case. Therefore the factor militating severance in capital cases does not apply here. Thus, all of the factors favor trying the charges together. Defendant demonstrates no error. [3]

---

[2] Defendant's counsel argued: Carlos "had no reason to lie and he was on the stand, and he said that Julio had a gun. It was a handgun. . . . [L]ike I said, I don't think there is any reason to disbelieve him on that. [¶] He saw him [defendant] with a handgun."

[3] Because we consider this issue on the merits we need not consider defendant's argument that his counsel should have requested severance sooner or that his counsel rendered ineffective assistance for failing to sooner request severance.

6

### 2. *Alleged Prosecutorial Misconduct*

Defendant argues the prosecutor committed misconduct and that the prejudicial nature of the misconduct requires reversal. We find no misconduct.

Misconduct by the prosecutor violates the federal Constitution when it "'"'comprises a pattern of conduct "so egregious that it infects the trial with such unfairness as to make the conviction a denial of due process."'"'"' (*People v. Hill* (1998) 17 Cal.4th 800, 819.) "'Conduct by a prosecutor that does not render a criminal trial fundamentally unfair is prosecutorial misconduct under state law only if it involves "'"the use of deceptive or reprehensible methods to attempt to persuade either the court or the jury."'"' [Citation.]' [Citation.]" (*Ibid.*)

"'"'[T]he prosecution has broad discretion to state its views as to what the evidence shows and what inferences may be drawn therefrom.'" [Citation.]' [Citation.] 'When we review a claim of prosecutorial remarks constituting misconduct, we examine whether there is a reasonable likelihood that the jury would have understood the remark to cause the mischief complained of. [Citation.]' [Citation.] 'To prevail on a claim of prosecutorial misconduct based on remarks to the jury, the defendant must show a reasonable likelihood the jury understood or applied the complained-of comments in an improper or erroneous manner. [Citations.] In conducting this inquiry, we "do not lightly infer" that the jury drew the most damaging rather than the least damaging meaning from the prosecutor's statements.' [Citation.]" (*People v. Spector* (2011) 194 Cal.App.4th 1335, 1403.)

"'"'[A] defendant may not complain on appeal of prosecutorial misconduct unless in a timely fashion—and on the same ground—the defendant made an assignment of misconduct and requested that the jury be admonished to disregard the impropriety. [Citation.]'"' [Citation.] A defendant who fails to object at trial 'waive[s] any error or misconduct emanating from the prosecutor's argument that could have been cured by a timely admonition.' [Citation.]" (*People v. Spector*, *supra*, 194 Cal.App.4th at pp. 1402-1403.)

7

*a. Alleged Coaching*

Defendant argues the prosecutor coached a witness on how to answer a question posed by the judge. Defendant did not raise this issue when the alleged misconduct occurred, but instead raised it only in his new trial motion. The issue therefore is forfeited.[4] (*People v. Spector*, *supra*, 194 Cal.App.4th at p. 1403.)

Even if the issue were cognizable defendant demonstrates no error. In the complained of colloquy, the trial court asked Manuel whether the cell phone he testified Duran left at his employment prior to entering defendant's car was the one in a prior prosecution exhibit. The prosecutor said that the phone in the exhibit was found in Duran's pocket at the coroner's, which Lisa later confirmed in her testimony. The court ordered the prosecutor's statement stricken and asked Manuel about the phone. Manuel testified the phone Duran had on November 28 was not the same one defendant had taken from Duran.

The trial court found that the prosecutor was not trying to coach Manuel when she responded to the court's question. The court also found that even if the prosecutor had attempted to coach Manuel, he was hostile to the prosecution and would not have answered in a manner to accommodate the prosecutor.

The record supports the trial court's findings. The record suggests the prosecutor was surprised by the court's question and was responding to the court. Additionally, at the preliminary hearing, Manuel distinguished between the cell phone defendant took from Duran and the cell phone Duran left at his worksite prior to leaving with defendant. Thus, defendant's inference that Manuel testified to accommodate the prosecutor is not supported as it was clear Manuel had previously distinguished between the two phones.

Assuming the prosecutor committed misconduct, such misconduct was harmless beyond a reasonable doubt. The cell phone was relevant in that it bolstered Lisa's testimony that defendant stole Duran's cell phone and called her from it. But the

---

**4**     In a footnote, defendant states that it would have been futile for him to have objected, but the record does not support that statement.

evidence was not critical to the prosecution's case and could not have affected the verdict. Other evidence overwhelmingly showed defendant believed Duran and Kristian had a relationship including defendant's statements to Duran's colleagues, defendant's statements to Kristian, and defendant's suicide note. Defendant demonstrates no prejudice from the alleged misconduct.

*b. Alleged Exclusion of Defendant's Family*

Defendant argues that the prosecutor improperly attempted to exclude his family members from the trial. The record does not support his contention.

Defendant's statement that his mother was placed on a witness list but not called at trial demonstrates no impropriety. He does not show the prosecutor placed defendant's mother on a witness list in bad faith, and no law required the prosecutor to call every witness on her witness list.

During trial, defense counsel told the court that two individuals removed by police were relatives of his client. According to the prosecutor, the officers did not tell the individuals they had to leave the courtroom. Instead, the individuals left after defense counsel said something to defendant's ex-mother-in-law. The court indicated it would conduct a hearing after trial if requested. No such request was made and the issue is now forfeited. The record as it stands does not support either the statement that the individuals were removed by police or defendant's statement that the individuals who left the courtroom were his family members.

Finally, defendant states that the prosecutor sought to remove his ex-mother-in law, which is accurate but moot because the trial court denied that request. In short, defendant demonstrates no person was improperly excluded from his trial.

*c. Closing Argument*

Defendant argues the prosecutor committed misconduct during her closing argument. Defendant forfeited this claim of error by failing to raise it in the trial court. (*People v. Spector, supra*, 194 Cal.App.4th at pp. 1402-1403.) In any event, defendant's argument lacks merit.

The prosecutor argued as follows: "Now ladies and gentlemen, look, she [Sandra] says she's bought a gun. She's got a gun in the back of this car. Now it's not the gun that was used in the murder, but I don't know why she would buy a gun. You heard her say she doesn't know anything about guns." The prosecutor continued: "she said she didn't buy the gun at defendant's request; but I ask you, ladies and gentlemen why would she buy a gun like that?"

This argument indicates the prosecutor repeated Sandra's testimony that she did not buy the gun at defendant's request but questioned that testimony. Such questioning was not improper and jurors could decide whether Sandra's testimony was credible. (*People v. Young* (2005) 34 Cal.4th 1149, 1192 ["prosecutor is entitled to comment on the credibility of witnesses based on the evidence adduced at trial"].) Defendant's claim that the prosecutor referred to facts that were not in evidence with respect to the gun is incorrect. In any event, any error in the prosecutor's argument about Sandra's gun was harmless beyond a reasonable doubt. It was stipulated that Sandra's gun was not used in the murder, and defendant's counsel conceded that defendant had a gun when he spoke to Carlos two days after Duran's death. Whether Sandra purchased the gun for defendant or not was not material, and the prosecutor's argument regarding it was harmless beyond a reasonable doubt.

Finally defendant argues that a portion of the prosecutor's rebuttal argument constituted misconduct: She argued: "If he didn't commit it, it's not guilty. If he might have committed it, it's not guilty. If he could have committed it, it's not guilty. If it's probably he committed it, it's not guilty. Not sure, but very likely[,] it's not guilty. [¶] Then I just hang my hat right now. I retire. I quit because there would be no way to convict anyone. [¶] It's a doubt based on reason, reasonable person standard, what is reasonable and what is not reasonable. That's all; and the instruction itself tells you it is not beyond any doubt because everything in human affairs is subject to some doubt and it's not imaginary doubt. [¶] You know when counsel gets up here and says the only way this could make sense is if someone else did it, that's imaginary doubt." According

10

to defendant, "the prosecutor was not only trying to discredit the defense, but also was trivializing the reasonable doubt standard . . . at the same time."

"Prosecutorial argument that denigrates defense counsel directs the jury's attention away from the evidence and is therefore improper.  [Citation.]  In evaluating a claim of such misconduct, we determine whether the prosecutor's comments were a fair response to defense counsel's remarks.  [Citation.]"  (*People v. Young*, *supra*, 34 Cal.4th 1149, 1189.)  Here, the prosecutor was responding to defense counsel's argument that the evidence raised a reasonable doubt as to defendant's guilt and if jurors had any question they were required to acquit defendant.  The prosecutor described the correct standard – reasonable doubt -- and properly argued that the doubt defendant sought to invoke was not reasonable.  While the prelude to the specific standard may have been unnecessary, the challenged argument neither infected the trial with unfairness nor constituted the use of reprehensible or deceptive methods.

In any event, even if the closing argument amounted to misconduct the argument was harmless beyond a reasonable doubt.  Jurors were properly instructed on reasonable doubt and we must presume jurors followed the court's instructions. [5]  (*People v. Osband* (1996) 13 Cal.4th 622, 717.)  Moreover, this was not a close case.  Defendant admitted one of the charges and evidence of the other was overwhelming.

### 3. Sentence

Respondent argues that the court erred in sentencing defendant to one-third the midterm for the possession of a firearm charge.  We agree.

---

[5]      Jurors were instructed "whenever I tell you the People must prove something, I mean they must prove it beyond a reasonable doubt unless I specifically tell you otherwise.  [¶]  Proof beyond a reasonable doubt is proof that leaves you with an abiding conviction that the charge is true.  The evidence need not eliminate all possible doubt because everything in life is open to some possible or imaginary doubt.  [¶]  In deciding whether the people have proved this case beyond a reasonable doubt as to each count or allegation, you must impartially compare and consider all the evidence that was received throughout the entire trial.  Unless the evidence proves the defendant guilty beyond a reasonable doubt, he is entitled to an acquittal and you must find him not guilty."

11

In the context of determinate sentencing with multiple convictions, the court imposes a principal term and a subordinate term.  (Pen. Code, § 1170.1, subd. (a).)  The subordinate term consists of one-third the middle term of imprisonment.  (*Ibid*.)  That is exactly what the court did in this case.

But here defendant was not convicted of multiple crimes calling for determinate term sentences.  Instead he was convicted of one crime calling for an indeterminate term (murder) and one crime calling for a determinate term (possession of a firearm).  Sentencing defendant for the indeterminate term must be separate from sentencing him for the determinate term.  (*People v. Neely* (2009) 176 Cal.App.4th 787, 797.)  Thus, the methodology of imposing sentence for persons convicted of multiple crimes calling for determinate sentences is inapplicable here.  (*Ibid*.)

Defendant should have been sentenced to a separate determinate term for the possession charge, not a subordinate term.  The case therefore must be remanded to the trial court to exercise its discretion in sentencing defendant to the possession of a firearm by a felon charge.

## DISPOSITION

The case is remanded to the trial court for resentencing on the possession of a firearm by a felon offense.  In all other respects, the judgment is affirmed.


FLIER, J.

WE CONCUR:



RUBIN, Acting P. J.



GRIMES, J.


12