[Crim. No. 22964. July 28, 1983.]

THE PEOPLE, Plaintiff and Respondent, v.
LARRY LEONARD, Defendant and Appellant.

**COUNSEL**

Eleanor M. Kraft, under appointment by the Supreme Court, for Defendant and Appellant.

George Deukmejian and John K. Van de Kamp, Attorneys General, Robert H. Philibosian, Chief Assistant Attorney General, William D. Stein, Assistant Attorney General, Martin S. Kaye and Dane R. Gillette, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**MOSK, J.**—Defendant appeals from a conviction of two counts of armed robbery. He contends that by admitting into evidence the guilty plea of another person, arrested at the same time as defendant, the court denied

him the constitutional right to confrontation and violated its statutory obligation under Evidence Code section 352 to exercise its discretion to exclude the evidence as unduly prejudicial. As will appear, we conclude the statutory claim has merit and compels reversal. We therefore do not reach the constitutional issue.

On the evening of May 19, 1981, Matthew Cusimano and Stephanie Ryan went to dinner. They first parked Matt's car in the parking lot of the Colonial Mortuary, owned by the Cusimano family, and left for the restaurant in Stephanie's car. When they returned, Matt parked Stephanie's car next to his. He stepped out of the car, leaving the lights on and the engine running. Stephanie joined Matt beside the open door on the driver's side. As they were saying good-night two men approached them from behind. One man, pointing a gun, ordered Matt to lie down and remove his jewelry. The assailants also ordered Stephanie, crouched beside Matt, to give them her jewelry. When she had difficulty removing a ring the second man, unarmed, pulled off her necklace and hit her in the face with his fist. The two left with the couple's jewelry and Matt's wallet. The police were called.

In a preidentification statement to the police both victims described defendant as approximately 5'6" tall and in his early 20's. Stephanie noted that he was about her height and of slight build. She also said he wore dark upper clothing and a dark knit watchcap, and that his hair was coifed in a short "Afro" style. About an hour after the robbery the victims were taken separately to view three men detained by the police following the report of the crime. Matt was not able to identify anyone, but did recognize the clothing of two of the men as that worn by the robbers. Stephanie identified the same two men—the gunman and one Steven Johnson—as the robbers, and stated that defendant was the gunman. She said he had held the gun in his left hand. Following Stephanie's identification defendant and Johnson were arrested. The third detainee, Everett, was also arrested, but later released. Neither the gun nor any of the stolen items was found on either suspect. Fingerprints taken from Stephanie's car and footprint casts taken from the immediate vicinity of the robbery were inconclusive.

At the beginning of defendant's trial the prosecuting attorney announced that he intended to introduce into evidence Steven Johnson's negotiated guilty plea to a single count of robbery in connection with the incident. Because Johnson had not yet been sentenced, he successfully invoked his privilege against self-incrimination and was therefore declared unavailable as a witness (Evid. Code, § 240, subd. (a)(1)); he specifically declined to

answer whether he had been with defendant on the date of the robbery. The court heard oral argument on the motion on two occasions, and then ruled the plea preliminarily admissible under the hearsay exception for declarations against penal interest (Evid. Code, § 1230), on condition that its relevance be demonstrated.

At trial Matt and Stephanie testified to the events of the evening of the robbery. Two police officers also testified, one relating defendant's statement that he, Johnson and Everett had come to the area to do some shopping but, finding stores closed, had gone to a bus stop to return home. Defendant's mother was called briefly to the stand to testify that her son is right-handed. At the close of the case, prior to instructing the jury, the court announced that it was taking judicial notice of the fact that Steven Johnson had pleaded guilty to one count of robbery—the robbery of Matt Cusimano—on condition that he not be sent to state prison and that the second count and the arming allegation be dismissed. The jury returned a verdict convicting defendant on both counts of robbery and finding the arming allegation to be true.

Defendant first argues that the admission into evidence of his coarrestee's guilty plea under the declaration against penal interest exception to the hearsay rule (Evid. Code, § 1230) violated his Sixth Amendment right to confrontation and cross-examination. ■ However, he also challenges the trial court's failure to exercise its discretion under section 352 of the Evidence Code to exclude the evidence as unduly prejudicial. Because this statutory issue is dispositive we need not address the Sixth Amendment claim. ■ It is well established that "we do not reach constitutional questions unless absolutely required to do so to dispose of the matter before us." (*De Lancie* v. *Superior Court* (1982) 31 Cal.3d 865, 877 [183 Cal.Rptr. 866, 647 P.2d 142]; *People* v. *Green* (1980) 27 Cal.3d 1, 50 [164 Cal.Rptr. 1, 609 P.2d 468]; *People* v. *Williams* (1976) 16 Cal.3d 663, 667 [128 Cal.Rptr. 888, 547 P.2d 1000].) We turn therefore to defendant's statutory claim.

Section 352 of the Evidence Code provides in pertinent part: "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will . . . (b) create substantial danger of undue prejudice . . . ." ■ When a section 352 objection is raised, "the record must affirmatively show that the trial judge did in fact weigh prejudice against probative value." (*People* v. *Green, supra,* 27 Cal.3d at p. 25, citing *People* v. *Ford* (1964) 60 Cal.2d 772, 801 [36

Cal.Rptr. 620, 388 P.2d 892].) Thus the fact that proffered evidence may satisfy the requirements of an exception to the hearsay rule, as here, does not of itself render the evidence admissible when a section 352 objection has been raised.

■■■ Here defense counsel explicitly argued, in response to the district attorney's motion to admit Johnson's plea, that under section 352 "the Court has to consider whether this guilt by association in this close case, being an identity case, is more prejudicial than probative." The district attorney then responded to the "352 motion or issue," stressing "the importance of the evidence to the People's case." The issue was thus clearly before the court; yet in its ruling admitting the plea as a declaration against penal interest the court made no mention whatsoever of the section 352 objection, nor gave any indication that it had in fact weighed the probative value of the evidence against its prejudicial effect. Its failure to do so was error. (*People* v. *Green, supra,* 27 Cal.3d at p. 24.)

In this case the probative value of the coarrestee's guilty plea is questionable at best. The fact that Johnson pleaded guilty to the robbery of Matthew Cusimano is not legally relevant without evidence linking defendant to Johnson's criminal activity. Indeed, the court recognized the relevance problem and initially admitted the plea only conditionally: "Now, let me say though I am making this preliminary indication on the assumption that it is going to be relevant at the time, and therefore I would ask the People to wait until the end of the case before submitting that and be happy to hear as to the issue of relevancy of the evidence at that time. In other words, I am making this preliminary indication based on essentially an offer by the People that there are other circumstances and statements, I take it some of them . . . made by Mr. Leonard himself that might tie in here and so I'm not going to allow the evidence until we have heard whether those statements will be forthcoming or not." Despite this admonition the district attorney offered no evidence directly relating Johnson's participation in the robbery to the issue of defendant's guilt. Nevertheless, the court took judicial notice of Johnson's plea and so informed the jury.

The prejudicial effect of Johnson's guilty plea, however, is clearly substantial and far outweighs any probative value the evidence might have. That some time after the robbery defendant was stopped and arrested with another man who then pleaded guilty to the commission of a robbery earlier in the evening invites an inference of guilt by association—particularly when much of the prosecution testimony at trial was illustrated with diagrams that referred to the assailants as "L" and "J." Fairness and objectivity would

have required the diagram characters to be labeled as "1" and "2" or "A" and "B." That the jury was influenced by the evidence of Johnson's plea is apparent from the fact that it returned to court during its deliberations to ask for documentation of that plea. One juror voiced concern: "Is there any way we can determine the age of Johnson? Does it make any difference? Is it relevant?"

In these circumstances the court abused its discretion by admitting Johnson's guilty plea into evidence. (*People* v. *Cardenas* (1982) 31 Cal.3d 897, 904-905 [184 Cal.Rptr. 165, 647 P.2d 569].) ▇ We must therefore consider whether the error requires reversal of the conviction. Under the standard set out in *People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243], we must determine from the whole record whether it is reasonably probable that without the error a result more favorable to defendant would have occurred.

As the parties agree, the outcome of the trial turned on the credibility of the witness identification of the robbers. Absent the coarrestee's guilty plea, which the district attorney acknowledged was "crucial" to the People's case, the jury would have been left with Matt and Stephanie's testimony regarding defendant's appearance and dress, with the police officers' accounts of the victims' earlier statements, with the officers' own recollections of the detention and arrest, and with defendant's mother's testimony that her son is right-handed. Neither defendant nor Johnson testified.

The record contains numerous inconsistencies and contradictions. For example, the descriptions of the robbers' height, weight and age given immediately following the incident depart markedly from defendant's actual physical appearance. Stephanie consistently described defendant as 5'6" tall, of slight build, and in his early 20's; yet in fact he was 5'11" tall, weighed approximately 164 pounds, and was 16 years old. Stephanie also stated on several occasions that the gunman was left-handed; yet competent evidence was presented that defendant is in fact right-handed. There are additional discrepancies in the testimony concerning the robbers' hairstyles and clothing. Although apprehended shortly after the robbery, the defendant possessed no loot and no gun.

But for the introduction of Johnson's guilty plea, it is reasonably probable that the jury would have acquitted the defendant. During its deliberations the jury in fact returned to the courtroom with questions concerning Stephanie's identification of the gunman. Given the discrepancies in the record concerning the identity of the robbers, we cannot say the error was harmless under the *Watson* test. (*People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].)

The judgment is reversed.

Bird, C. J., Richardson, J., Kaus, J., Broussard, J., Reynoso, J., and Grodin, J., concurred.