Filed 7/7/15  P. v. Wright CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D065334 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCD244829) |
| KENNETH SCOTT WRIGHT, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Peter L. Gallagher, Judge.  Affirmed.

Denise M. Rudasill, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Eric A. Swenson and Lynne G. McGinnis, Deputy Attorneys General, for Plaintiff and Respondent.

Kenneth Scott Wright appeals a judgment convicting him of battery causing serious bodily injury (Pen. Code, § 243, subd. (d)),[1] two counts of simple assault (§ 240), attempted extortion (§ 524), and assault by means likely to produce great bodily injury. (§ 245, subd. (a)(4)).  On appeal, Wright contends the trial court abused its discretion by allowing the charges against him that arose on two different occasions to be consolidated for trial, and permitting a coparticipant's guilty plea to be admitted as evidence of his guilt on the attempted extortion charge.  Wright asserts the consolidation resulted in a grossly unfair trial and a denial of due process, the admission of a coparticipant's guilty plea into evidence violated his Sixth Amendment right of confrontation, and he received ineffective assistance of counsel because his attorney did not object to admission of the coparticipant's guilty plea based on Wright's right of confrontation.

We conclude Wright was not prejudiced by the consolidation, the joinder of separate offenses did not result in a grossly unfair trial or a denial of due process, the admission of the coparticipant's guilty plea to extortion did not affect the jury's guilty verdict on the attempted extortion charge, Wright's Sixth Amendment right of confrontation argument was forfeited on appeal, and Wright's ineffective assistance of counsel argument has no merit because he was not prejudiced by the claimed error.

FACTUAL BACKGROUND

In the absence of a challenge to the sufficiency of the evidence to support the convictions, we summarize the facts established by the record, in the light most favorable to the judgment.  (See *People v. Davis* (1995) 10 Cal.4th 463, 509.)

---

[1]     All statutory references are to the Penal Code unless otherwise specified.

A.  The December 4, 2012, Incident (Counts 1 & 2)

Wright was charged with assaulting and battering Sergio Vega in the San Diego County jail on December 6, 2012.  Wright and Vega got into an argument because Vega told another inmate he didn't have to order commissary items for Wright.  Wright admitted to punching Vega.  As a result, Vega suffered a 4-to-5 centimeter laceration on the back of his scalp and a brain hemorrhage.  Wright testified that during the argument Vega insulted him, made motions challenging him to fight, and threatened to stab him.  Vega testified that when he turned in an attempt to avoid Wright's blow, his sandal slipped, which made him fall to the ground even faster after Wright hit him.

A surveillance video, without audio, recorded the incident.  It showed Vega and Wright having a discussion, Wright walking to his cell and motioning for Vega to enter the cell.  It also showed Wright walk back toward Vega in an aggressive posture, with his shirt off, and punch Vega in the face.  Vega's hands were down when Wright punched him.

B.  The February 25, 2013, Incident (Counts 3, 4, 5 & 6)

Wright was charged with the attempted extortion and assault of Robert Brown and the attempted robbery and assault of Daniel Hunter in the San Diego County jail on February 25, 2013.  The incident also involved Jose Villalobos and David Lopez.

According to Wright, there was tension in the jail because Brown "walks around the module like he's somebody because he gets morphine pills and a lot of people are mad about it."  Wright testified that he, Villalobos and Lopez congregated as a group to talk to Brown about his behavior.  Hunter's cell was next to Brown's, and Wright stood

3

next to a pillar outside of Hunter's cell in case Hunter came to Brown's rescue. He watched Hunter while Villalobos spoke to Brown, and he saw Hunter grab a pencil. When Villalobos hit Brown, Hunter rushed out of his cell to help Brown, and Wright hit Hunter.

A surveillance video, without audio, recorded the incident. It showed Villalobos, Lopez, and Wright walking down the stairs together from the top level of the day room to the floor level and converging around Brown's cell. It also showed Wright walk behind the pillar in front of Hunter's cell, and Villalobos and Lopez hit Brown.

According to Hunter, he heard Villalobos talking to Brown about his pills and was coming out of his cell when Wright sucker-punched him. He stumbled back into his cell and was continually hit on the back of his head, face and stomach. He remained standing and crouched over until he fell to the ground. Hunter testified that while he was on the ground someone tried to take one of his rings, but he did not see the person tugging on it. The investigating deputy testified that there were scratches on Hunter's hand, consistent with someone using their fingernails to try to "rob that person of [his] ring." However, the deputy also conceded that the scratches and abrasions on Hunter's hands could have been caused by falling, scraping a wall, offensive or defensive punching, or by covering his head while being beaten.

After the incident, Wright wrote two letters in an attempt to get Hunter to recant his testimony against him: one to DeLeal (known as "Soldier"), that he signed with the name, "Thugg," and another directly to Hunter, addressing him as "Scrappy," and referring to Villalobos as "Chico," Lopez as "Cyco,", and Brown as "Pudding."

4

The first letter to Soldier stated, "Soldier, first and foremost, I send my love and respects. [¶] . . . [¶] . . . I'm not going to sit here and talk your ear off with this. So look, my boy. Scrappy is pressing charges on me. I already got arraigned last week, assault and battery and robbery. Scrappy's saying I jacked his ring and beat him up. What the fuck is that shit, dog? I know he's a little fag, and I don't expect no less from him. Boy, dog, can you please just ask him to change his story? It's already said and done, but he can help me by saying he rushed me first and lied about the ring. Dog, please? This is fucking up my life. Get back at me, G. And what's up with my taxes? Thugg."

The second letter to Scrappy stated, "Look Scrappy, will you please just talk to me for a few seconds? I can understand why you don't want to talk to me, but this shit is very serious and my life is in your hands at this point. Me and you have always been on good terms and I've never had any problems with you. We actually got along pretty good. I don't care about Chico or Cyco and what they had going on with Pudding. My case concerns just me and you, and I'm supposed to start trial next month for this shit. Please, Scrappy, will you please just talk to me for a few seconds on the door so we can work this out? I'll hook you up whenever I can. Just please don't fuck me over on this."

PROCEDURAL BACKGROUND

The prosecution filed a motion to consolidate for trial charges relating to the December 2012 and the February 2013 incidents, and defense counsel filed a motion opposing consolidation. The trial court granted the prosecution's motion.

The prosecution then filed a consolidated information. With respect to the December 2012 incident, Wright was charged with battery causing serious bodily injury

5

(§ 243, subd. (d); count 1), assault likely to produce great bodily injury (§ 245, subd. (a)(4); count 2), and personally inflicting great bodily injury on Vega in the commission of count 2. (§ 1192.7, subd. (c)(8).) In connection with the February 2013 incident, Wright was charged with the attempted extortion of Brown (§ 524; count 3), attempted robbery of Hunter (§ 664/211; count 4), and two counts of assault likely to produce great bodily injury on Brown and Hunter (§ 245, subd. (a)(4); counts 5 & 6).

The prosecution filed a motion to admit into evidence Villalobos's guilty plea as to the attempted extortion charge. The trial court granted the motion.

Wright was convicted of battery causing serious bodily injury (count 1), two counts of simple assault (a lesser crime of counts 2 & 5), attempted extortion (count 3), and assault by means likely to produce great bodily injury (count 6). The jury acquitted him of counts 2, 4, and 5. The court sentenced Wright to a term of 12 years 4 months in state prison. Wright appeals.

DISCUSSION

A. Consolidation of the Two Actions

Under section 954 a court may consolidate charges made in two or more accusatory pleadings where the pleadings "charge two or more different offenses . . . of the same class of crimes or offenses, under separate counts . . . ." However, a trial court "in the interests of justice and for good cause shown, may in its discretion [also] order that the different offenses or counts set forth in the accusatory pleading be tried separately or divided into two or more groups and each of said groups tried separately." (§ 954.)

6

The consolidation of charged offenses is preferred by the law because it promotes efficiency (*People v. Ochoa* (1998) 19 Cal.4th 353, 409 (*Ochoa*); *People v. Soper* (2009) 45 Cal.4th 759, 772 (*Soper*)) and conserves public funds and judicial resources. (*People v. Bean* (1988) 46 Cal.3d 919, 939 (*Bean*).) A joint trial " 'avoids needless harassment of the defendant' " (*Ochoa*, at p. 409) and the presentation of the same factual issues in two separate trials. (*Soper,* at p. 772; *Ochoa,* at p. 409.) It "requires a single courtroom, judge, and court attaches. Only one group of jurors need serve, and the expenditure of time for jury voir dire and trial is greatly reduced over that required were the cases separately tried. In addition, the public is served by the reduced delay on disposition of criminal charges both in trial and through the appellate process." (*Bean*, at pp. 939-940.) If the statutory criteria for consolidation are satisfied, a defendant who opposes consolidation must show prejudice sufficient to outweigh the benefits of consolidation. (*Ochoa,* at p. 409.)

Consolidation requires the trial court take two steps. First, the court must determine whether each set of charged offenses are of the same class. (*People v. Grant* (2003) 113 Cal.App.4th 579, 586 [" ' "Offenses are of the same class when they possess common attributes . . . ." ' "].) If so, the next step involves weighing the benefits derived from consolidation against prejudice a defendant may incur because of the consolidation. (*Soper, supra,* 45 Cal.4th at p. 773.) Even if a trial court properly consolidates charged offenses under section 954, " 'a reviewing court must reverse the [lower court] judgment if the "defendant shows that joinder actually resulted in 'gross unfairness' amounting to a denial of due process." ' " (*People v. Macklem* (2007) 149 Cal.App.4th 674, 698.)

7

The propriety of a court's ruling on a motion to consolidate two separate actions is judged by the information available to the court at the time the motion is heard. (*Ochoa*, *supra,* 19 Cal.4th at p. 409.) We review the ruling for an abuse of discretion and determine whether the ruling fell " 'outside the bounds of reason.' " (*Id*. at p. 408.)

Wright does not dispute that the offenses charged in each action were of the same class for purposes of consolidation. (See, e.g., *People v. Walker* (1988) 47 Cal.3d 605, 622 ["Robbery, murder and assault with intent to commit murder are all offenses of the same class."].) We focus on whether the consolidation prejudiced the defendant (*Ochoa, supra*, 19 Cal.4th at p. 409) or resulted in a denial of due process. (*People v. Stitely* (2005) 35 Cal.4th 514, 531 ["A pretrial ruling that was correct when made can be reversed on appeal only if [consolidation] was so grossly unfair as to deny due process."] (*Stitely*).)

1. *Did the Consolidation of the Two Actions Prejudice the Defendant?*

Wright has not made a clear showing of prejudice because of the trial court's refusal to separate the cases for trial. Even if the offenses from two actions are eligible for consolidation, a trial court may order separate trials " 'in the interests of justice and for good cause shown . . . .' " (§ 954; *People v. Earle* (2009) 172 Cal.App.4th 372, 386 (*Earle*); *Macklem, supra,* 149 Cal.App.4th at p. 698.) However, "[t]he burden is on the party seeking severance to clearly establish that there is a substantial danger of prejudice requiring that the charges be separately tried." (*Bean, supra,* 46 Cal.3d at p. 938.) "A ruling on a motion to sever is based on a weighing of the probative value of any cross-admissible evidence against the prejudicial effect of evidence the jury would not

8

otherwise hear, but in the weighing process the beneficial results of joinder are added to the probative value side. Therefore a defendant seeking severance must make an even stronger showing of prejudicial effect than would be required in determining whether to admit other-crimes evidence in a severed trial." (*Id.* at p. 936.) Moreover, a trial court's discretion to deny severance of properly joined offenses is even broader than its discretion to admit evidence of uncharged offenses in a separate trial. (*Soper, supra,* 45 Cal.4th at p. 775, fn. 7.)

In deciding whether consolidation of offenses for trial will prejudice a defendant, the "key inquiry before the trial court . . . is whether joint trials pose an unacceptable risk of prejudice, i.e., of unfairly affecting the adjudication of one or more of the charges." (*Earle, supra,* 172 Cal.App.4th at p. 387.) The trial court must evaluate the particular circumstances of each case. (*People v. Bradford* (1997) 15 Cal.4th 1229, 1315.) The relevant factors are whether: " '(1) evidence on the crimes to be jointly tried would not be cross-admissible in separate trials; (2) certain of the charges are unusually likely to inflame the jury against the defendant; (3) a "weak" case has been joined with a "strong" case, or with another "weak" case, so that the "spillover" effect of aggregate evidence on several charges might well alter the outcome of some or all of the charges; and (4) any one of the charges carries the death penalty or joinder of them turns the matter into a capital case.' " (*Id.* at p. 1315.)

These criteria, however, are not "equally significant." (*People v. Bradford, supra,* 15 Cal.4th at p. 1315.) The first step in determining whether consolidating two actions for trial will prejudice a defendant is to determine if evidence of one set of charges would

9

be cross-admissible in a hypothetical separate trial of the other under Evidence Code section 1101. (*Bradford,* at pp. 1315-1316; *Earle, supra,* 172 Cal.App.4th at p. 388.) If there is cross-admissibility, "any inference of prejudice is dispelled." (*Bradford,* at p. 1316.)

Under Evidence Code section 1101, evidence of other crimes is not admissible to prove a defendant's conduct on another occasion (*id.,* subd. (a)), but is admissible to show "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident." (*Id.,* subd. (b).) Moreover, "there exists a hierarchy, or continuum, with respect to the degree of similarity that is needed for cross-admissibility, depending upon the purpose [citation] for which introduction of the evidence is sought." (*Alcala v. Superior Court* (2008) 43 Cal.4th 1205, 1222, fn. omitted (*Alcala*).) The least degree of similarity between two acts is required for evidence to be cross-admissible on the issue of intent. (*Id.* at pp. 1222-1223.) In fact, "[t]he two acts need only be sufficiently similar to suggest that the defendant probably had the same intent each time." (*Stitely, supra,* 35 Cal.4th at p. 532.)

Here, the trial court found there was cross-admissible evidence on the issue of intent. In each case, the charged misconduct occurred in a jail and "involve[d] allegations of the defendant engaging in assaultive conduct, punching a victim," and the issue was "whether he was engaging in . . . intentional conduct to knock out or to harm

10

the victim as opposed to defending himself." The court concluded there was cross-admissibility.[2]

We agree with the trial court that there was cross-admissible evidence on the issue of Wright's intent to commit assault. (See, e.g., *Ochoa, supra*, 19 Cal.4th at p. 410 [reasoning that "evidence of each assault could be used under Evidence Code section 1101, subdivision (b), to show defendant's mental state for each other assault, namely his intent"].) The fact that Wright resorted to punching his adversary during a confrontation, on two different occasions, suggested he harbored the same intent in each instance, and was thus admissible to negate Wright's self-defense theory. As the California Supreme Court explained in *Alcala*, " ' "[t]he recurrence of a similar result . . . tends (increasingly with each instance) to negat[e] accident or inadvertence or self-defense or good faith or other innocent mental state, and tends to establish (provisionally, at least, though not certainly) the presence of the normal, i.e., criminal, intent accompanying such an act

---

2    The court was not persuaded that the attempted robbery or attempted extortion charges in the second case "transform[ed] the case or it create[d] really a different type of charge." With regard to this finding, we find it sufficient to note that "even the absence of cross-admissibility would not establish that a trial court erred when, as here, the offenses have been properly joined by statute and none of the other [remaining] factors" indicate possible prejudice or that the trial court abused its discretion. (*Alcala, supra,* 43 Cal.4th at p. 1227; *Macklem, supra,* 149 Cal.App.4th at p. 698.) As explained below in part B., we further conclude Wright has not met his burden of making a clear showing of prejudice as to the two remaining factors relevant to this analysis—that any of the charges were likely to inflame the jury against him or that a weak case was joined with a strong one.

. . . ." ' " (*Alcala, supra,* 43 Cal.4th at pp. 1223-1224.) We conclude the trial court correctly determined there was cross-admissibility on the issue of intent.[3]

Because there was cross-admissibility of evidence on the issue of intent with respect to properly joined offenses, any inference of prejudice was dispelled and we need not address the remaining factors. (See, e.g., *Frank v. Superior Court* (1989) 48 Cal.3d 632, 639 [explaining the determination that charged crimes would be cross-admissible at separate trials can be dispositive of whether the court abused its discretion in denying severance].) Therefore, we find that the trial court's decision to consolidate the two actions was not outside the bounds of reason or an abuse of discretion.

_____

[3]     The court also determined there would be cross-admissibility on the issue of knowledge. At the hearing on the motion to consolidate, the prosecution argued the Vega case could be used under Evidence Code section 1101, subdivision (b), in the Hunter case because "it shows knowledge. He knows and is on notice that his one punch can knock someone out, that it's likely to cause great bodily injury. It shows knowledge that this is being recorded." In the first case, "it's in the middle of the day room." In the second case, "it's behind a pillar with the same floor plan as the module" in the first case. "And his assault occurs now inside a cell behind a pillar. So he has knowledge of where to commit his assaults and crimes."

Having decided the trial court correctly determined there was cross-admissibility on the issue of intent, we need not address whether there was also cross-admissibility as to knowledge because "[i]f a judgment rests on admissible evidence it will not be reversed because the trial court admitted that evidence upon a different theory, a mistaken theory, or one not raised below." (*People v. Brown* (2004) 33 Cal.4th 892, 901 [explaining that " ' "a ruling or decision, itself correct in law, will not be disturbed on appeal merely because given for the wrong reason. If right upon any theory of the law applicable to the case, it must be sustained regardless of the considerations which may have moved the trial court to its conclusion." ' "].)

12

2. *Did the Consolidation of the Two Actions Result in a Denial of Due Process?*

The consolidation of the separate offenses for trial did not result in a grossly unfair trial. "Where, as here, the trial court's ruling on a motion to sever is correct at the time it was made, we must nevertheless reverse the judgment if the ' "defendant shows that joinder actually resulted in 'gross unfairness' amounting to a denial of due process." [Citation.]' " (*People v. Grant, supra,* 113 Cal.App.4th at p. 587.) Even were there sufficient evidence to support the convictions, if the consolidation of separate actions substantially affected the jury's verdicts, the resulting convictions must be reversed. (*Id.* at pp. 587-588.)

In *Soper, supra,* 45 Cal.4th at page 784, the California Supreme Court held the defendant did not show he had been denied due process of law because "the evidence underlying the Rigby and Olson charges was relatively straightforward and distinct, and . . . the evidence related to each charge was independently ample to support defendant's conviction of both crimes. Nor was there any great disparity in the nature of the two charges—the facts pertaining to each crime, compared to the other, were not likely to unduly inflame the jury. Nor, contrary to defendant's assertion, [was] it clear that the evidence underlying one charge (the Olson murder) was significantly weaker than that underlying the other (the Rigby murder). Finally, the jury was instructed on the elements of murder, on the burden of proof for conviction, and . . . that each count charged a distinct offense that must be separately decided." (*Id.* at p. 784, fn. omitted.) The court further reasoned that the jury "was able to follow the instructions and to compartmentalize the evidence presented in the two cases [because] the jury found

13

defendant guilty of only second degree murder as to Olson, while finding him guilty of the first degree murder of Rigby . . . ." (*Ibid*.) Thus, the court held defendant's trial was not grossly unfair. (*Ibid.*)

In the instant case, the facts of neither of the consolidated actions were likely to inflame the jury against Wright. Both actions occurred in a jail and both altercations arose out of sufficiently similar circumstances—the first, because Vega told another inmate he didn't have to get Wright commissary items, and the second, because Hunter was going to interfere with the attempted extortion of Brown. Wright hit both victims, and pictures of the victims' injuries were entered into evidence. Neither action involved more violent conduct or required more gruesome evidence than the other. (See, e.g., *Alcala, supra,* 43 Cal.4th at p. 1227 [explaining that evidence underlying one set of charges is unlikely to inflame the jury in assessing a second group of charges, when the evidence underlying both sets of offenses is " 'similar in nature and equally gruesome.' "].)

The evidence underlying each action was also equally strong. With respect to the December 2012 incident, a surveillance video showed Wright strike Vega, and Wright admitted to striking Vega over an argument regarding commissary items. There was clear proof supporting the assault and battery charges as to Vega.

As to the February 2013 incident, the surveillance video showed Wright, Villalobos, and Lopez converging around Brown's cell. Wright admitted he knew the nature of the visit, to confront Brown at the time he received his morphine pills, and that he heard Villalobos say to Brown, "How come you don't hook me up with morphine."

14

He also admitted to striking Hunter, who was coming to Brown's defense. This evidence clearly substantiated the charge that Wright aided and abetted the attempted extortion of Brown, as well as the assault charge as to Hunter. Although the video did not capture Wright striking Hunter, Wright's admission, plus the two letters he wrote in an attempt to get Hunter to recant his testimony, sufficiently incriminated him of the assault.[4]

Because the evidence in support of each of the cases was independently strong and ample to support Wright's convictions, we conclude the jury's verdicts on either set of offenses were not likely affected by hearing evidence on the other set of offenses. (See, e.g., *Bean, supra,* 46 Cal.3d at p. 940 [finding no denial of due process where the evidence "was sufficiently persuasive . . . of his guilt that it [was] not reasonably probable that the jury was influenced in its verdict of guilt of the Fox crimes by its knowledge of his involvement in the Schatz offenses."].) We also conclude the evidence underlying each set of charges was straightforward and distinct, which further mitigated the risk of prejudicial spillover.

Moreover, the trial court instructed the jury regarding separate offenses, "Each of the counts charged in this case is a separate crime. You must consider each count separately and return a separate verdict for each one except for the lesser included

---

[4]     "[A]s between any two charges, it always is possible to point to individual aspects of one case and argue that one is stronger than the other. A mere imbalance in the evidence, however, will not indicate a risk of prejudicial 'spillover effect,' militating against the benefits of joinder and warranting severance of properly joined charges. [Citation.] Furthermore, the benefits of joinder are not outweighed—and severance is not required—merely because properly joined charges might make it more difficult for a defendant to avoid conviction compared with his or her chances were the charges to be separately tried." (*Soper, supra,* 45 Cal.4th at p. 781.)

15

offenses[,] which [were] just recently addressed." The jury was also instructed as to the burden of proof required for each conviction (beyond a reasonable doubt), and the mental states required for each offense. The judge further advised the jury that "[t]he People must prove not only that Mr. Wright did the act charged, but that he acted with a particular intent."

Furthermore, the jury found Wright guilty of some offenses but not others, which confirms the jury was able to follow the instructions and compartmentalize the evidence presented in the two cases. As to Vega, the jury found Wright guilty of battery and simple assault but not guilty of assault with intent to cause great bodily injury or the enhancement. As to Brown, the jury found Wright guilty of attempted extortion and simple assault. As to Hunter, it found Wright guilty of assault by means likely to produce great bodily injury but not attempted robbery. These results show the jury was able to base its verdicts on the evidence presented and there was no improper spillover effect from consolidating the two actions in one trial.

Given the substantial evidence supporting Wright's guilt for each conviction, the instructions to the jury, and the verdicts in accordance with the strength of the evidence, we conclude the consolidation of the two actions for trial did not affect the outcome and Wright was not denied due process of law or a fair trial.

B. Admission of a Coparticipant's Guilty Plea

Wright contends the trial court erred by admitting Villalobos's guilty plea to attempted extortion of Brown into evidence because it was more prejudicial than probative under Evidence Code section 352. We review the trial court's determination

16

for abuse of discretion. (*People v. Leonard* (1983) 34 Cal.3d 183, 189 (*Leonard*).) "A trial court's decision to admit or exclude evidence is a matter committed to its discretion ' "and will not be disturbed except on a showing the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice." ' " (*People v. Geier* (2007) 41 Cal.4th 555, 585.) However, under the *People v. Watson* (1956) 46 Cal.2d 818 standard, even if a trial court errs in admitting evidence at trial, reversal of a conviction is not required, unless it is evident from the record that there was a reasonable probability that without the error the outcome of the trial would have been different. (*Leonard,* at p. 189, citing *Watson,* at p. 836; see, e.g., *People v. Heard* (2003) 31 Cal.4th 946, 978 ["Even if we were to agree with defendant that the trial court erred in admitting the photographic evidence in question, we nonetheless would conclude that any error in admitting such evidence was harmless under the *Watson* standard."].)

A guilty plea is admissible as a declaration against penal interest under Evidence Code section 1230. (*People v. Cummings* (1993) 4 Cal.4th 1233, 1321.) However, the fact that proffered evidence falls within an exception to the hearsay rule does not end the inquiry regarding its admissibility. (*Leonard, supra,* 34 Cal.3d at p. 188; *People v. Geier, supra,* 41 Cal.4th at p. 584.) If an objection is made on the ground that the evidence would be unduly prejudicial, a trial court must evaluate the evidence under Evidence Code section 352 and exclude it if its probative value is outweighed by the probability of substantial prejudice. (*Leonard,* at pp. 187-188.) Moreover, the trial court must conduct the Evidence Code section 352 analysis on the record. (*Leonard,* at pp. 187-188.)

17

Here, the trial court determined Villalobos's guilty plea was probative of two issues in this case: Villalobos committed the crime of attempted extortion (which had to be proven before the prosecution could show Wright aided and abetted the crime), and Wright intended to aid and abet the attempted extortion.[5] On the record, the trial court stated, "I am going to do a[n Evidence Code section] 352 analysis that it's more probative than prejudicial. I know there's some alleged prejudice by guilt by association, but the People do have to show that the crime was committed on the aiding and abetting theory. And for the limited purposes to prove this and the intent, I do believe it's relevant. And the [codefendant] committed the crime, the attempted extortion. The prejudice is not outweighed by its probative value, so I will allow that to come in for that limited purpose, and we will have limiting instructions."

The trial court gave the jury special instructions as to the guilty plea, "During the trial, certain evidence was admitted for a limited purpose only. You may consider that evidence only for that purpose and no other. [¶] Exhibit number 16 is the guilty plea document of Jose Villalobos. You may consider that document only in deliberating for count number 3 as it pertains to evidence that Mr. Villalobos committed the crime of attempted extortion with Robert Brown listed as the victim."

Wright argues that the admission of the guilty plea was more prejudicial than probative because it permitted the jury to infer guilt by association, the jury was

---

[5] To prove Wright aided and abetted Villalobos in committing the crime of attempted extortion, the prosecution had to show Villalobos committed the attempted extortion, Wright knew Villalobos intended to commit attempted extortion, Wright intended to aid and abet Villalobos, and did in fact aid and abet Villalobos.

18

improperly instructed to consider Villalobos's guilty plea in the deliberation of his guilt, and the plea was inherently unreliable as a statement against penal interest under Evidence Code section 1230 because Villalobos could have pleaded guilty in exchange for a lower sentence.

We conclude that even if the trial court erred in admitting Villalobos's guilty plea, the error did not affect the outcome of the trial given the overwhelming evidence against Wright on the attempted extortion charge. This case is unlike *Leonard,* in which the Court of Appeal determined it was reasonably probable the defendant would have been acquitted of armed robbery had the alleged coconspirator's guilty plea not been admitted into evidence. (*Leonard, supra,* 34 Cal.3d at p. 189.) In *Leonard,* the issue was the identity of one of two assailants, one of which was allegedly the defendant. (*Id.* at p. 188.) There was no evidence linking the defendant to the scene of the crime, other than the fact that the defendant was found and arrested with the coconspirator some time after the robbery, and the coconspirator's guilty plea. (*Ibid.*) The jury found the defendant guilty of robbery despite inconsistencies and contradictions in the evidence. (*Id.* at p. 189.) One of the victim's description of the physical appearance of the assailant did not match that of the defendant. (*Ibid.*) She described the assailant as being left-handed, although the defendant's mother testified he was right-handed, and, when the defendant was arrested soon after the robbery, he possessed no gun or proceeds from the robbery. (*Ibid.*) Additionally, the diagrams the prosecution used at trial referred to the assailants with the initials of the defendant and coconspirator (*Id.* at pp. 188-189), and during deliberations the jury asked for documentation of the plea, suggesting their decision was influenced by it. (*Id.* at p. 189.) Under these

circumstances, the court concluded that but for the introduction of the guilty plea, it was reasonably probable the jury would have acquitted the defendant. (*Ibid.*)

In the instant case, there was substantial evidence linking Wright to the attempted extortion apart from Villalobos's guilty plea, and his identity was not an issue. As discussed above, the surveillance video showed Wright, Villalobos, and Lopez acting in concert and surrounding Brown's cell. Wright admitted the purpose of the visit was to confront Brown regarding his morphine pills, and that he hit Hunter because Hunter was coming to Brown's rescue. This evidence not only implicated Wright in the attempted extortion on an aiding and abetting theory but provided compelling evidence of his guilt. Under these circumstances, it was not reasonably probable that a jury would have acquitted Wright of the attempted extortion charge but for the admission of Villalobos's guilty plea. We conclude that if the trial court erred in admitting the guilty plea, it was harmless error.

C. <u>Sixth Amendment Right of Confrontation and Ineffective Assistance of Counsel</u>

Wright contends his counsel was ineffective because he did not object to admission of Villalobos's guilty plea based on Wright's Sixth Amendment right of confrontation; therefore, the issue has not been waived on appeal. Defense counsel objected to admission of Villalobos's guilty plea on the ground that it would be more prejudicial than probative under Evidence Code section 352, but made no mention of

Wright's right of confrontation.[6] Therefore, the issue has been forfeited for purposes of appeal unless Wright's ineffective assistance of counsel claim has merit. (*People v. Alvarez* (1996) 14 Cal.4th 155, 186 [" ' "[Q]uestions relating to the admissibility of evidence will not be reviewed on appeal in the absence of a specific and timely objection in the trial court on the ground sought to be urged on appeal." ' "]; *People v. Neely* (2009) 176 Cal.App.4th 787, 795 [considering merits of waived issue because there was an ineffective assistance of counsel claim].)

To succeed on his ineffective assistance of counsel claim, Wright must demonstrate that he was prejudiced by his counsel's failure to object to the guilty plea based on his right of confrontation. (*People v. Lucas* (1995) 12 Cal.4th 415, 436.) If no showing of prejudice can be made, there is no need to inquire whether counsel's efforts were in fact ineffective. (*People v. Banks* (2014) 59 Cal.4th 1113, 1169-1170.)

To demonstrate prejudice, a " 'defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " (*People v. Banks*, *supra,* 59 Cal.4th at p. 1170.) " ' "A reasonable probability is a probability sufficient to undermine confidence in the outcome." ' " (*People v. Lucas, supra,* 12 Cal.4th at p. 436.) "In making this determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury. . . . [A] verdict or conclusion only weakly supported

---

6     When called as a witness, Villalobos refused to testify and asserted his Fifth Amendment right against self-incrimination.

by the record is more likely to have been affected by errors than one with overwhelming record support."  (*Strickland v. Washington* (1984) 466 U.S. 668, 695.)

Whether a defendant was in fact prejudiced by counsel's failure to object is a mixed question of law and fact subject to independent review.  (*In re Scott* (2003) 29 Cal.4th 783, 812; *People v. Ledesma* (1987) 43 Cal.3d 171, 219.)  " '[F]indings of fact, though not binding, are entitled to great weight when supported by substantial evidence.' "  (*Scott,* at p. 812; *Ledesma*, at p. 219.)

As we explained above, the evidence of Wright's guilt of the attempted extortion charge, apart from Villalobos's guilty plea, was clear and compelling.  There is no reasonable probability the verdict would have been different absent introduction of Villalobos's guilty plea.  Because we conclude Wright was not prejudiced by defense counsel's failure to make a confrontation clause objection, Wright's ineffective assistance of counsel claim has no merit and his right of confrontation claim was forfeited for purposes of appeal.

## DISPOSITION

The judgment is affirmed.

McDONALD, Acting P. J.

WE CONCUR:

McINTYRE, J.

IRION, J.

22