Filed 7/1/16  P. v. Salgado CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>MARVIN M. SALGADO,<br><br>        Defendant and Appellant. | A141831<br><br>(S.F. City & County<br>Super. Ct. No. 221361-01) |

Marvin M. Salgado appeals from a judgment upon a jury verdict finding him guilty of assault with a deadly weapon, a bat, with the allegation that defendant personally inflicted great bodily injury (Pen. Code, §§ 245, subd. (a)(1); 12022.7, subd. (a)) and felony battery with a serious injury with the allegation that defendant personally used a deadly weapon (Pen. Code, §§ 243, subd. (d); 12022, subd. (b)(1)). The jury acquitted defendant of an attempted murder charge.  Defendant contends that the trial court abused its discretion in excluding evidence that his former co-defendant pleaded guilty to assaulting the victim and that he admitted he "hit a black guy last night" in a jailhouse phone call.  We affirm.

## I.  FACTS

At about 4:15 a.m. on October 6, 2013, Troy Perkins had a dispute with Darlin Uvence-Cruz (Cruz), whom Perkins knew as "Larry."  Perkins testified that Cruz was drunk and attempting to cheat him in a deal on his recyclables, so he hit Cruz in the jaw. After that incident, Perkins walked on Folsom Street, toward 14th Street and the Foods Co. store, and saw Cruz and defendant.  Cruz and defendant had "shiny" baseball bats

1

and proceeded to hit Perkins in the head. He fell to the ground. Perkins was in a coma for four days and spent twelve days in the hospital. On November 7, 2013, he identified defendant and Cruz in two separate photograph lineups. He said that he often saw them together.

Mohamed Bagadi witnessed the incident. He was on a break from his job at U.C.S.F. Medical Center and was smoking a cigarette on Folsom Street. His co-worker, Sunny Bang, was with him. He saw two men and a woman walking on Folsom Street with shopping carts going toward the Foods Co. He then saw two men, one of whom he identified as defendant,[1] walk toward the three people. Defendant and the other man were each holding an object. One man was holding an aluminum bat; the other man held an object, but Bagadi could not identify it from his vantage point. Bagadi saw defendant and the other man chase after one of the men from the threesome he saw walking on Folsom Street. Defendant and the other man hit the man from the threesome with the baseball bat and the other object. Bagadi screamed at them to stop. A U.C.S.F. police officer responded to the scene and asked defendant to drop the bat. Defendant was arrested.

Bang also worked at U.C.S.F. Medical Center and took a break with Bagadi shortly after 4:00 a.m. on October 6, 2013. He saw three people, who appeared to be homeless, pushing shopping carts down Folsom Street toward 14th Street. A few minutes later, he saw two men, each carrying a long object in their hand, walking quickly as if trying to catch up to someone. The two men pursued one of the three homeless people and struck him in the head with bats. One of the men had an aluminum bat while the other had a wooden bat or a piece of wood about the size of a bat. Bang called 911 while Bagadi yelled at the men to stop. An officer from a nearby building responded to the commotion. One of the men fled. The other one approached the officer; he had a metal bat. He complied with the officer's demand to put the bat down. Bang was unable to identify defendant or the other perpetrator in a photographic lineup or at trial. He

---

[1] Bagadi testified that defendant was the man he saw being arrested on the morning of the incident. He was otherwise unable to identify him in court.

2

testified only that the U.C.S.F. officer arrested the person he saw with the aluminum bat on the morning of the incident.

U.C.S.F. Officer Stephen Lee responded to the scene. When he arrived, another officer had already handcuffed defendant. A baseball bat was lying on the ground nearby. In a search of defendant, Lee found a parking ticket that the police used to broadcast the license plate number of a vehicle that left the scene.

In response to the broadcast, the police stopped a truck a couple of blocks away. Lee took a witness there to participate in an in-field identification. The witness identified Cruz. In a search of the truck and the surrounding area of the incident, Lee did not find any other baseball bats. The police found a shirt with blood on it in the truck.

U.C.S.F. Officer Mary Snider investigated the incident. She visited Perkins in the hospital a week after the incident, but due to Perkins's altered mental status, she did not interview him. She later interviewed Perkins on November 7, 2013. Snider showed Perkins two different photographic lineups. Perkins identified defendant in one of the photographic lineups, and Cruz in the other, as the men who attacked him.

Snider also reviewed the video surveillance footage obtained from the Foods Co. store and obtained a still photographic shot from the video. That still shot showed defendant and Cruz. In the photo, defendant's clothing matched the clothing he was wearing upon his arrest, while Cruz was wearing a different shirt. The shirt shown in the still shot, however, matched the shirt found in the truck. The still shot also showed Cruz with a metallic baseball bat, while defendant was carrying what appeared to be a wooden object. In addition, the surveillance video showed Cruz running from the scene with a baseball bat in his hands. The surveillance video was played for the jury.

During cross-examination, Perkins denied that he was a violent person. He testified that he could not remember an incident in which he beat an unarmed woman, and that he did not attack a security guard, but that the security guard attacked him. He later acknowledged that he was arrested for the incident with the unarmed woman. He also admitted that he was convicted of a felony for drug sales.

3

The parties stipulated that Perkins was hospitalized from October 6, 2013 to October 18, 2013. He was treated for bilateral contusions to his face, lacerations to his scalp and face, orbital and occipital skull fractures, and a subdural hematoma. The parties also stipulated that San Francisco Police Officer Goss, while on patrol on September 17, 2005, saw Perkins kick a woman in the abdominal area at least four times while she was lying on the ground in a fetal position.

Defendant testified that he is 36 years old and attended elementary school in Honduras. He denied hitting Perkins. He claimed that he told Cruz to stop hitting him. On the day of the incident, defendant was working with Cruz in his recycling business by helping him load recyclables while Cruz negotiated with people on price. They finished working at about 4:00 a.m. At that point, Perkins approached Cruz and asked him if he could buy his recyclables. Defendant had known Perkins for about two months from his involvement in the recycling business and found him to be an aggressive and violent person. He had observed Perkins getting into fights with others. He knew Perkins carried knives, pieces of wood with filed points, golf clubs, and bats in his shopping cart.

Cruz and Perkins argued because Perkins insisted that Cruz buy his recyclables but Cruz could not accommodate any more merchandise in his truck. Cruz showed him some change, indicating that he did not have enough money to buy Perkins's recyclables. Perkins took the money and punched Cruz in the eye. Cruz appeared to be stunned and then went to his truck and retrieved a bat. Cruz pursued Perkins. Defendant followed them and urged Cruz not to get into any trouble. Defendant was carrying a tall Bud Light beer in a paper bag. Cruz continued to pursue Perkins and demand that he be given his money back. Cruz caught up to Perkins and hit him in the back with the bat. Perkins fell to the ground. Cruz hit him a second time in the head. Defendant told Cruz to leave Perkins alone and that he was going to kill Perkins, but Cruz continued to hit Perkins until defendant was able to get the bat away from him. Defendant then heard someone yell, "hey." Defendant saw a police officer and walked toward him. He did not try to explain the incident to the police officer because he does not speak English.

4

Defendant also presented three character witnesses who testified he was a nonviolent person.

## II.  DISCUSSION

Defendant first contends that the trial court erred in precluding him from introducing into evidence Cruz's guilty plea, allocution, and jailhouse admission in a phone call he made on the evening of his arrest that he "hit a black guy last night."  He argues that the evidence was admissible as third party culpability evidence.

Cruz was charged as a co-defendant in this case but reached an agreement with the prosecutor during jury selection.  Defendant thereafter requested that the court take judicial notice of the plea and allow it, and Cruz's admission during the plea proceedings that he assaulted Perkins using a deadly weapon, into evidence.  The prosecutor argued that defendant was not entitled to introduce just Cruz's statement implicating himself but would be required to include Cruz's entire allocution—"that he participated in the baseball bat beating of the victim with Mr. Salgado"—thus implicating defendant in the beating.  The prosecutor also opposed the admission of the jailhouse telephone statement, arguing it was inadmissible hearsay.

The court denied defendant's motion, finding that under Evidence Code section 352, the fact that Cruz pled guilty was more prejudicial than probative, and that it would be potentially confusing to the jury.  The court reasoned that the jury might be inclined to assume guilt by association and not necessarily, as defendant argued, that the co-defendant was the sole culprit.  The court took the issue of the admissibility of the jailhouse call under submission.

Prior to the court's instructions to the jury, defendant raised the issue of calling Cruz as a witness.  The court reiterated that due to potential confusion for the jury and prejudice to the defendant, it would not permit defendant to call Cruz as a witness and ask him about his plea or allocution.  The court further noted that as Cruz was still in custody facing other charges that had not yet been dismissed, and had not yet been sentenced following his plea to the other charges, it was highly unlikely that his defense counsel would permit him to testify.  The court stated that it had not ruled on the

jailhouse statement as defendant indicated he was not going to call Cruz as a witness. The parties thereafter agreed to stipulate that Cruz made a jailhouse call to a family member and said, "I hit a black guy last night."

The stipulation about the jailhouse call was not read to the jury. The issue was discussed in the following colloquy: "[MR. CLARK (Assistant District Attorney)]: Okay. [¶] So with regard to the jail phone call stipulation, on the night that Mr. Cruz was arrested he made a phone call from jail to a woman. They spoke in Spanish . . . . [¶] . . . But he stated apparently I am in jail. The woman replies, 'What happened?' He says, 'I hit a black guy last night' and 'the police caught me and Kuki,' K-U-K-I. [¶] [THE COURT]: Can I ask you before you continue, we did reach a stipulation on this, didn't we? [¶] [MR. CLARK]: We haven't articulated it on the record. [¶] [THE COURT]: Okay. [¶] [MR. CLARK]: And so I mentioned to Ms. Lacambra [(Deputy Public Defender)] that over the lunch hour, whatever break, I went and looked again at the Spanish interpretation that was supplied regarding the statement that Mr. Cruz made from jail, that is that—and recall I said that I would stipulate because we were having a problem figuring out—I don't know if we were but there was an issue regarding the availability of Mr. Cruz, et cetera and some of the issues around his Fifth Amendment privilege. But when I looked at it again, that he said they caught me and Kuki. That's something that perhaps it would be better if he were here to talk about, to be cross-examined about why he said that. That's one issue, we can pick it up at another time. [¶] Then he— [¶] [THE COURT]: Well let me ask you this. What was the first part of that, he says 'I hit a black guy last night'? [¶] [MR. CLARK]: He says 'I hit a black guy last night' and— [¶] [MS. LACAMBRA]: And then he gets cut off. [¶] [MR. CLARK]: Then 'The police caught me and Kuki.' [¶] [THE COURT]: What's different about that? They did catch him and somebody else. And he admits he hit a black man the night before. I don't see that there is any difference. Okay? [¶] [MR. CLARK]: An issue— [¶] [THE COURT:] Well maybe we will resolve it right now. But let's go on. What's the next issue?" There is no further discussion of the jailhouse call in the record.

As the Attorney General argues, defendant waived any issue concerning the admission of the jailhouse call. He did not obtain a final ruling from the court on the admissibility of the call. "[T]he absence of an adverse ruling precludes any appellate challenge." (*People v. McPeters* (1992) 2 Cal.4th 1148, 1179.) Moreover, it is likely that defense counsel had a tactical reason for not further pursuing a stipulation with the prosecutor about the evidence in light of Cruz's additional statement in the jailhouse call that the police caught him with Kuki. In any event, defendant did not preserve the issue for review. (*Ibid.*; *People v. Rowland* (1992) 4 Cal.4th 238, 259.)

The court, further, did not abuse its discretion in excluding Cruz's plea and allocution from evidence. (See *People v. Waidla* (2000) 22 Cal.4th 690, 717–718 [we review the trial court's ruling on evidentiary issues for abuse of discretion].) In *People v. Hall* (1986) 41 Cal.3d 826, 833, our state Supreme Court held that to be admissible, "third-party evidence need not show 'substantial proof of a probability' that the third person committed the act; it need only be capable of raising a reasonable doubt of defendant's guilt." The evidence must meet the minimum standards of relevance; "there must be direct or circumstantial evidence linking the third person to the actual perpetration of the crime." (*Ibid.*; *People v. McWhorter* (2009) 47 Cal.4th 318, 368.) The evidence is also subject to exclusion under Evidence Code section 352. (*Hall, supra,* 41 Cal.3d at pp. 833–834.)

The trial court did not abuse its discretion in finding that the evidence was excludable under Evidence Code section 352. While the evidence would have shown that Cruz was guilty of assaulting Perkins, it did not absolve defendant of the charged crimes. Indeed, as the prosecutor argued below, defendant was not entitled to introduce only Cruz's admission that he assaulted Perkins but would have had to include Cruz's entire allocution, which implicated defendant, as well. As the trial court found, the evidence thus had a tendency to be more prejudicial than probative. (See *People v. Leonard* (1983) 34 Cal.3d 183, 188–189 [admission of co-arrestee's guilty plea prejudicial as it invited an inference of guilt by association].)

7

Further, the evidence implicating defendant was also admissible pursuant to Evidence Code section 356. That section specifically permits an adverse party to inquire into the whole of a declaration, conversation, or writing when only part of it is offered by a party into evidence. "The purpose of this section is to prevent the use of selected aspects of a conversation, act, declaration, or writing, so as to create a misleading impression on the subjects addressed." (*People v. Arias* (1996) 13 Cal.4th 92, 156.) In sum, had Cruz's allocution been admitted, the jury would have learned that Cruz pled guilty and that defendant participated in the assault. The prejudicial effect of this evidence outweighed any probative value that the fact of Cruz's guilty plea could have offered defendant.

### III. DISPOSITION

The judgment is affirmed.


_____
Rivera, J.


We concur:


_____
Reardon, Acting P.J.


_____
Streeter, J.

8